757 P.2d 1180

**Connie NASH, Plaintiff–Respondent,**

v.

**James W. OVERHOLSER,
Defendant–Appellant.**

No. 16680.

Supreme Court of Idaho.

June 10, 1988.

Sudweeks, May, Shindurling, Stubbs & Mitchell, Twin Falls, for defendant-appellant. Jon J. Shindurling, argued.

Denman & Reeves, Idaho Falls, for the plaintiff-respondent. Reginald R. Reeves, argued.

HUNTLEY, Justice.

James Overholser appeals from the trial court's denial of his motion for summary judgment pursuant to an interlocutory appeal, wherein he asserts that the complaint filed by plaintiff, and former wife, Connie Nash, alleging five counts of assault and battery by him during the course of their marriage, was barred due to the *res judicata* effect of the decree of divorce entered between them. The court also granted partial summary judgment in favor of Overholser for Nash's failure to file within the statute of limitations as to all but one count of assault and battery. The grant of partial summary judgment is not before us on appeal.

The salient facts follow: After almost four years of marriage, Nash filed a complaint for divorce from Overholser on August 29, 1984. The complaint cited irreconcilable differences as the grounds for divorce. Overholser failed to answer the complaint, but the parties entered into a stipulation relating to disposition of their property which was executed on March 4, 1985. A magistrate judge entered decree of divorce on March 6, 1985. On January 13, 1986, Nash filed complaint against Overholser alleging five instances of assault and battery which occurred on December 20, 1980, June 8, 1982, August 10, 1983, August 15, 1983, and April 12, 1984, respectively. All but the last of these counts were subject to the trial court's order of partial summary judgment as barred by the statute of limitations. The last incident of April 12, 1984, which is not barred by the statute of limitations, appears to be the most significant of the instances of abuse. In that count, Nash alleges she received a permanent injury to her right arm when Overholser allegedly threw her against the corner of a shower. Overholser moved for summary judgment on all five counts on

grounds that all counts were barred by the doctrine of *res judicata*, alleging that the subject matter embodied by the allegations of assault and battery, which occurred during the course of marriage, was within the scope of matters which could have been addressed by the divorce court. The trial court denied the motion, stating that "where there is a tort action and where damages are sought, [a divorce action] is not the proper forum for resolution. The general law is that parties are free to litigate points which were not at issue in the first proceeding." We affirm the trial court, but note that the instant case falls under a limited and unique exception to this Court's traditional interpretation of the concept of *res judicata*.

■ Ordinarily, the doctrine of *res judicata* requires that all claims or issues which were, *or could have been*, litigated in a previous action between the same parties, are barred from later prosecution. *McDonald v. Barlow*, 109 Idaho 101, 705 P.2d 1056 (Ct.App.1985); *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983); *Compton v. Compton*, 101 Idaho 328, 612 P.2d 1175 (1980). Further, Idaho courts have jurisdiction to, and have in fact, addressed and resolved issues of intentional wrongful conduct occurring during the course of marriage while handling general divorce proceedings. *Milbourn v. Milbourn*, 86 Idaho 213, 384 P.2d 476 (1964). Nash's allegations could have been litigated during the divorce proceedings.

■ However, there are considerations unique to cases such as this which compel us to acknowledge a narrow exception to our traditional interpretation of the doctrine of *res judicata*. These concerns are aptly explained in *Stuart v. Stuart*, 140 Wis.2d 455, 410 N.W.2d 632 (Ct.App.1987), which we cite with approval. *Stuart* presented a factual scenario strikingly similar to that in the instant case. The court in *Stuart* refused to apply the doctrine of *res judicata* to preclude a subsequent tort claim filed by a former wife against her former husband. The court noted that mandatory joinder of tort claims with equitable divorce proceedings may be undesirable, as well as unfair. If the former wife is forced to bring her claim for damages either simultaneously with, or prior to, her complaint for divorce, she will be:

> ... forced to elect between three equally unacceptable alternatives: (1) Commence a tort action during the marriage and possibly endure additional abuse; (2) join a tort claim in a divorce action and waive the right to a jury trial on the tort claim; or (3) commence an action to terminate the marriage, forego the tort claim, and surrender the right to recover damages arising from spousal abuse. To force such an election would require an abused spouse to surrender both the constitutional right to a jury trial and valuable property rights to preserve his or her well-being. This the law will not do.

*Stuart*, 410 N.W.2d at 638.

These concerns are equally valid in Idaho. Divorce proceedings should be handled expeditiously and with a view toward minimizing emotional trauma; such proceedings certainly should not serve as a catalyst for additional spousal abuse. Also, in Idaho, a complaint for dissolution proceeds in equity, *Rudd v. Rudd*, 105 Idaho 112, 666 P.2d 639 (1983), and a jury is not employed. A former spouse should not be required to forego his or her right to jury trial simply to satisfy the doctrine of *res judicata*, particularly where, as here, the objectives of that doctrine do not compel such a result.

> [R]equiring joinder does not fulfill the objectives of the res judicata doctrine. Res judicata seeks judicial economy in the conservation of those resources parties would expend in repeated and needless litigation of issues [which were or might have been] resolved in a single prior action.... [D]ivorce and tort actions lack an identity of causes of action or claims. Applying the res judicata doctrine to bar the tort action fails to achieve the doctrine's objectives and would be fundamentally unfair. Therefore, we conclude that a doctrine of res

judicata cannot act as a bar to [a post-divorce] tort action.

*Stuart,* 410 N.W.2d at 635–36.

We are persuaded by the reasoning of *Stuart.* The purposes of the doctrine of *res judicata* would not be served by prohibiting Nash from pursuing her timely-filed tort claim subsequent to the entry of her decree of divorce.

It is also important to note that Nash's tort allegations were neither pleaded nor addressed during the divorce proceedings and, in fact, Mrs. Nash's complaint alleged irreconcilable difference, not physical or mental cruelty, as the grounds for divorce. Further, this divorce proceeded on a default by Overholser. Had Overholser and Nash subjected themselves to the divorce court's jurisdiction regarding the tort claims, the concerns attendant to the concept of *res judicata* would have been implicated, but such is not the case here.

The order of the trial court is affirmed. Costs to respondent. No attorney fees awarded.

SHEPARD, C.J., BAKES and BISTLINE, JJ., concur.

JOHNSON, Justice, specially concurring.

While I concur with the result in this case, I am concerned that we have not sufficiently focused our analysis on the concept of claim preclusion and the transactional concept of a claim. In my opinion, this analysis would be more consistent with the law as it has developed in this state, and would not require the creation of "a narrow exception to our traditional interpretation of the doctrine of *res judicata,*" as stated in our opinion here. This analysis would demonstrate that Nash's claim for assault and battery was not part of the transaction out of which the divorce action arose.

In *Aldape v. Akins,* 105 Idaho 254, 258–59, 668 P.2d 130, 134–35 (1983), *rev. den.* (1983) our Court of Appeals adopted the reformulation of the doctrine of *res judicata* contained in Restatement (Second) of Judgments (1982) (the Second Restate-

ment). A petition for review of the unanimous opinion of the Court of Appeals in *Aldape* was filed with this Court pursuant to I.C. § 1–2409 and I.A.R. 118. I.C. § 1–2409 states that this Court "may, in its discretion grant" a petition for review of a decision of the Court of Appeals, and that this review "shall be governed by the rules of the supreme court." Our appellate rules relating to the Court of Appeals contain the following criteria for granting petitions of review:

(b) Criteria for Granting Petitions for Review by the Supreme Court. Granting a petition for review from a final decision of the Court of Appeals is discretionary on the part of the Supreme Court, and will be granted only when there are special and important reasons and a majority of the Justices direct that the petition be granted. The following, while neither controlling nor fully measuring the Supreme Court's discretion, are factors that will be considered in the exercise of the Court's discretion:

(1) Whether the Court of Appeals has decided a question of substance not heretofore determined by the Supreme Court;

(2) Whether the Court of Appeals has decided a question of substance probably not in accord with applicable decisions of the Idaho Supreme Court or of the United States Supreme Court;

(3) Whether the Court of Appeals has rendered a decision in conflict with a previous decision of the Court of Appeals;

(4) Whether the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings or so far sanctioned such procedure by a trial court as to call for the exercise of the Supreme Court's power of supervision;

(5) Whether a majority of the judges of the Court of Appeals, after decision, certifies that the public interest or the interests of justice make desirable a further appellate review.

I.A.R. 118(b).

In my opinion, the result of the failure of this Court to grant a petition for review is

that the decision of the Court of Appeals becomes the law of this state with regard to any new principles of law announced in the decision. Prior to the denial of review in *Aldape* this Court followed the formulation of the doctrine of *res judicata* set forth in *Joyce v. Murphy Land & Irrigation Co.*, 35 Idaho 549, 208 P. 241 (1922). *E.g., Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 446, 649 P.2d 1197, 1202 (1982). The decision of the Court of Appeals in *Aldape* has, since the denial of review by this Court, constituted the law of this state on the subject of *res judicata.*

In *Aldape* the Court of Appeals stated:

The Second Restatement expressly recognizes the difference between claim preclusion and issue preclusion. The bar of claim preclusion is succinctly stated at § 19: "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." The limits of this rule of bar are determined by the dimensions of the concept of a "claim." The Second Restatement adopts a transactional view toward claims.

When a valid and final judgment rendered in an action extinguishes the plaintiff's claim ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction ... out of which the action arose.

. . . .

What factual grouping constitutes a "transaction" ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Second Restatement at § 24. Comment a to § 24 makes it clear that the transactional concept of a claim is broad, and that the bar of claim preclusion is similarly broad:

[I]n the days when civil procedure still bore the imprint of the forms of action and the division between law and equity, the courts were prone to associate claim with a single theory of recovery, so that, with respect to one transaction, a plaintiff might have as many claims as there were theories of the substantive law upon which he could seek relief against the defendant....

. . . .

The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff....

Accordingly, the bar of claim preclusion may apply even where there is not a subsantial overlap between the theories advanced in support of a claim, or in the evidence relating to those theories. Comment b to § 24. This conclusion is more fully stated in § 25 of the Second Restatement:

The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

(1) To present evidence or grounds or theories of the case not presented in the first action, or

(2) To seek remedies or forms of relief not demanded in the first action.

Comment d in this section further explains the effect of claim preclusion:

Having been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction or series of transactions, and accordingly the second action should be held barred.

There are exceptions to the bar of claim preclusion. However, they are narrowly defined in § 26 of the Second

Restatement. Such exceptions are recognized where the parties themselves have agreed that the plaintiff may split his claim, where the court in the first action has expressly reserved the plaintiff's right to maintain the second action, where there are limitations on the subject matter jurisdiction of the court hearing the first action, or where the judgment in the first action was inconsistent with the implementation of a general statutory or constitutional scheme. Exceptions may also exist in special types of cases where a plaintiff is permitted to sue more than once for recurrent wrongs, and where there are extraordinary reasons for allowing a second action —such as the protection of personal liberty, or the need to bring coherency to disparate judgments in prior litigation.

We believe the Second Restatement, with its definitive treatment of claim preclusion, clarifies the scope of res judicata. We adopt it, subject to the ripeness limitation and mandamus exception which have been enunciated by our Supreme Court.

*Id.* at 258–59, 668 P.2d at 134–35. *See also Makin v. Liddle,* 108 Idaho 67, 68, 696 P.2d 918, 919 (1985), *rev. den.* (1985).

In my opinion, this case would be more appropriately disposed of by holding that the assault and battery claimed by Nash is not part of the transaction that was involved in her divorce action. As § 24 of the Second Restatement points out, whether a factual grouping constitutes a transaction is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Using these considerations, I am persuaded that pragmatically the assault and battery did not constitute part of the transaction out of which the divorce action arose.

It would be illogical to conclude that every event that occurred during the marriage of Nash and Overholser was part of the transaction of their marriage, and that any action for the dissolution of the marriage would necessarily require the joinder of all claims growing out of these events. For instance, if Nash had loaned Overholser an amount from her separate funds, and if it were due when her divorce was filed, the debt should not be considered to be part of the transaction of the marriage.

The transaction involved in the divorce action was the marriage. The transaction involved in the present action was the assault and battery. They are not part of the same transaction according to the factual grouping provided for in the Second Restatement as adopted in *Aldape.* I would affirm the trial court on this basis and avoid the necessity to create "a narrow exception to our traditional interpretation of the doctrine of *res judicata,*" as our opinion today does. In so doing, we continue to ignore that the Second Restatement was adopted as the law of this state by the denial of review in *Aldape.*

BISTLINE and HUNTLEY, JJ., concur.

HUNTLEY, Justice, concurring specially in the separate opinion of JOHNSON, Justice.

I concur with the views expressed in the special concurring opinion of Johnson, J., which I understand emphasizes two points:

(1) Decisions of the Court of Appeals upon which review has been denied do express the law of the State of Idaho; and

(2) A transactional approach should be utilized in determining whether a claim has been precluded.

The majority opinion is consistent with the transactional approach when one focuses on the following paragraph quoted by Justice Johnson from the Restatement (Second) of Judgments (1982), Section 24:

What factual grouping constitutes a "transaction" ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, *whether they form a convenient trial unit, and whether their treatment as a*

*unit conforms to the parties' expectations or business understanding or usage.* (Emphasis added).

In my view, for public policy purposes, it is virtually never a "convenient trial unit" to compound the trauma of divorce and child custody proceedings with the super-imposition of tort claims. Likewise, such would not conform to the expectations or usage of Idaho citizens, attorneys, or lawyers as I have understood them.

BISTLINE, Justice, concurring only in this Court's judgment affirming the trial court judgment.

Insofar as Idaho law is concerned, there is no precedent one way or the other governing the disposition of the issue presented.

Undoubtedly the law would have been better served had the district court ruled that plaintiff's cause of action was lost by not having been joined in the divorce action. Or, better yet, if not joined, at the least mentioned with a claim of the right to reserve it for a subsequent independent action. In that manner the defendant would at the least have had fair warning as to what the plaintiff had in store for him. It seems that there was a certain amount of sandbagging, *i.e.*, a pleasant divorce after an unpleasant marriage, but, lo! shortly thereafter followed the tort action which obviously had been part of the game plan. The circumstances, so it could be argued, worked an estoppel.

What should be considered as most disruptive by the majority holding and our unanimous affirmance is that it is another substantial inroad on the doctrine of *res judicata.* Following on the heels of *Duthie v. Gun Club,* 104 Idaho 751, 663 P.2d 287 (1983), one might approve today's opinion on the basis of the *ratio decedendi* in that case, *i.e.*, that the tort action had not yet quite ripened when the divorce action was before the court.

The legislature lately has fairly well preempted the field of domestic regulations, hence I believe inappropriate for the Supreme Court to sally forth and plough this new ground. This court has already made a shambles of well established case law in the judicial field of *res judicata* in the *Duthie* case, and I am not at all as convinced as I would like to be that the innovative trial court ruling should be upheld by this Court.

The defendant Overholser might very well have tried to involve the tort claims in the divorce action if he had advance warning that his wife was waiting in the wings to come after him with a damage action.