Paul A.L. NELSON, Petitioner,

v.

Loretto L. JONES, Respondent.

No. S-2663.

Supreme Court of Alaska.

Feb. 23, 1990.

---

William E. Olmstead and Loren Domke, Domke & Olmstead, P.C., Juneau, for petitioner.

Thomas W. Findley, Findley & Pallenberg, Juneau, for respondent.

Shelley K. Owens, Juneau, for amicus guardian ad litem.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION.

Petitioner seeks review of the superior court's denial of his discovery requests.

### II. FACTS AND PROCEEDINGS.

The present action is the fourth legal proceeding involving allegations by Jones that Nelson had sexually abused their daughter T. The underlying litigation out of which this petition arises was instituted by Nelson against Jones for abuse of process, malicious prosecution, and defamation.

The first legal proceeding between these parties commenced in September 1985, when Jones reported to the police that Nelson had sexually abused their daughter. Nelson was thereafter arrested and an indictment was returned charging him with second-degree sexual abuse of a minor. All criminal charges were dismissed on January 21, 1986.

One week later, the second legal proceeding was filed. Based on the same allegations as the criminal case, the Division of Family and Youth Services of the State of Alaska filed a petition to adjudicate the parties' daughter as a child in need of aid. That proceeding was dismissed in August 1986.

On August 27, 1986, Barbara Walker was appointed guardian ad litem (GAL) for the child in the then pending divorce action (the third legal proceeding) between Jones and Nelson. After the third day of trial in the divorce action the parties reached a settlement, which gave custody of the child to Jones and visitation rights to Nelson.

Nelson thereafter instituted the present abuse of process, malicious prosecution, and defamation case to "clear his name" of Jones' allegations of sexual abuse of their child. In preparation for trial Nelson served the GAL with a Notice of Deposition and Subpoena to Produce. The sub-

poena was quashed. Nelson next moved that the superior court release gynecological photographs taken by Dr. Claudia Foster, to whom Jones had taken the child for examination. The photographs had been sealed and delivered to the GAL's custody after the conclusion of the superior court proceedings in the divorce action. Nelson also moved to depose Dr. Foster and Dr. Dennis Batey, to whom Jones had also taken the child to be examined. Dr. Foster had testified during the divorce hearing. Dr. Batey had testified before the grand jury, but not during the divorce proceedings.

The superior court denied both of Nelson's motions. The court found as follows:

1. ... [T, the child] does have a privilege to keep private: (a) the photos, and (b) information between physician/patient possessed by Doctors Batey and Foster;

2. that this privilege was not waived by the GAL's consent in the divorce and Child In Need of Aid proceedings to the use of this evidence in those proceedings;

3. that the GAL has standing to assert [T's] rights in this proceeding;

4. that the GAL is precluded under AS 47.17.040(b) and Alaska Rule of Evidence 503 [attorney-client privilege] from releasing information acquired in her role as GAL.

Nelson petitioned for review of this decision and order, and we granted the petition.[1]

## III. DISCUSSION.

### A. *Res Judicata—Compulsory Counterclaims.*

█ Jones argues that the issues presented in this petition have been mooted by application of the doctrine of res judicata. In *DeNardo v. State,* 740 P.2d 453, 455–56 (Alaska 1987), *cert. denied,* 484 U.S. 919, 108 S.Ct. 277, 98 L.Ed.2d 239 (1988), we discussed the subject of res judicata, noting the following principles:

Under the doctrine of res judicata, a judgment on the merits of the controversy bars subsequent actions between the same parties upon the same claim. *Drickersen v. Drickersen,* 546 P.2d 162, 169 (Alaska 1976) (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.405, at 621 (2d ed.1980)); *accord, Calhoun v. Greening,* 636 P.2d 69, 71–72 (Alaska 1981); *Engebreth v. Moore,* 567 P.2d 305, 307 (Alaska 1977). The doctrine implements "the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court." *Drickersen,* 546 P.2d at 169 (citations omitted), *quoted in Engebreth,* 567 P.2d at 307. It is settled that res judicata precludes relitigation by the same parties, not only of claims raised in the first proceeding, but also of those relevant claims that could have been raised. *Calhoun,* 636 P.2d at 72; *see also Pankratz v. State, Dep't of Highways,* 652 P.2d 68, 74 (Alaska 1982). The claims extinguished by the first judgment include "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction ... out of which the action arose," *State v. Smith,* 720 P.2d 40, 41 (Alaska 1986) (quoting with approval Restatement (Second) of Judgments § 24(a)

---

**1.** Briefing was ordered as to the following issues:

(a) Were the gynecological photographs of the parties' daughter privileged and therefore unavailable to Nelson in his action against Jones? Was any such privilege waived by the use of those photographs in the parties' divorce hearing?

(b) May the doctor who examined the parties' daughter, took the photographs at issue, and testified using the photographs at the divorce hearing, successfully assert the physician-patient privilege on the child's behalf, and thereby refuse to be deposed by Nelson in this action?

(c) Is the information gained by the child's lay guardian-ad-litem in the course of guardianship privileged and exempt from discovery under AS 47.17.040(b), Evidence Rule 503 (attorney-client privilege), or Evidence Rule 504 (physician-patient privilege)?

(d) Did the superior court err in precluding the petitioner Paul Nelson from taking Dr. Batey's testimony?

The petition was denied as to all other issues.

(1982)); a mere change in the legal theory asserted as a ground for recovery will not avoid the preclusive effect of the judgment. *Id; Pankratz,* 652 P.2d at 74. Jones' res judicata arguments are predicated on the compulsory counterclaim principles articulated in Civil Rule 13(a).[2] In this regard Nelson concedes that "it may be argued [that] each [of the causes of action in the instant case] arises out of some of the transactional events of the divorce." The question, therefore is whether interspousal tort claims are claims which, because of the command of Rule 13(a), should have been litigated in the divorce proceeding. We conclude that it would be an inappropriate construction of Rule 13(a), and of the principles of res judicata which we have adopted, to require tort actions between married persons to be litigated in the divorce proceeding.

▬ In reaching this conclusion we find the analysis of the Court of Appeals of Wisconsin in *Stuart v. Stuart,* 143 Wis.2d 347, 421 N.W.2d 505 (1988), *aff'g,* 140 Wis.2d 455, 410 N.W.2d 632 (App.1987) persuasive. There the court quoted the decision of the court below for the proposition that:

"Although joinder is permissible, the administration of justice is better served by keeping tort and divorce actions separate.... Divorce actions will become unduly complicated if tort claims must be litigated in the same action. A divorce action is equitable in nature and involves a trial to the court. On the other hand, a trial of a tort claim is one at law and may involve, as in this case, a request for a jury trial. Resolution of tort claims may necessarily involve numerous witnesses and other parties such as joint tortfeasors and insurance carriers whose interests are at stake. Consequently, requiring joinder of tort claims in a divorce action could unduly lengthen the period of time before a spouse could obtain a divorce and result in such adverse consequences as delayed child custody and support determinations. The legislature did not intend such a result in enacting the divorce code. *See* sec. 767.12(1), Stats." 140 Wis.2d at 466–67, 410 N.W.2d 632.

*Id.,* 421 N.W.2d at 508.[3] Also of significance is the Supreme Court of Idaho's decision in *Nash v. Overholser,* 114 Idaho 461, 462, 757 P.2d 1180, 1181 (1988). There the court stated:

Ordinarily, the doctrine of *res judicata* requires that all claims or issues which were, *or could have been,* litigated in a previous action between the same parties, are barred from later prosecution. *McDonald v. Barlow,* 109 Idaho 101, 705 P.2d 1056 (Ct.App.1985); *Duthie v. Lewiston Gun Club,* 104 Idaho 751, 663 P.2d 287 (1983); *Compton v. Compton,* 101 Idaho 328, 612 P.2d 1175 (1980). Further, Idaho courts have jurisdiction to, and have in fact, addressed and resolved issues of intentional wrongful conduct occurring during the course of marriage while handling general divorce proceedings. *Milbourn v. Milbourn,* 86 Idaho 213, 384 P.2d 476 (1964). Nash's allegations could have been litigated during the divorce proceedings.

However, there are considerations unique to cases such as this which compel us to acknowledge a narrow exception to our traditional interpretation of the doctrine of *res judicata.* These concerns are aptly explained in *Stuart v. Stuart,* 140 Wis.2d 455, 410 N.W.2d 632

---

**2.** Civil Rule 13(a) states:

*Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

**3.** *See also Lord v. Shaw,* 665 P.2d 1288, 1291 (Utah 1983); *Windauer v. O'Connor,* 107 Ariz. 267, 485 P.2d 1157, 1158 (1971).

(Ct.App.1987), which we cite with approval.

(Emphasis in original.) On the basis of the *Stuart* and *Nash* decisions, we hold that Nelson's claims against Jones for malicious prosecution, abuse of process, and defamation have not been mooted by application of the doctrine of res judicata.

## IV. COLLATERAL ESTOPPEL.

■ The GAL argues that Nelson is collaterally estopped from litigating the issue of his sexual abuse of T, and thus the discovery of the evidence sought by Nelson is not relevant and not reasonably calculated to lead to the discovery of admissible evidence as required by Civil Rule 26(b)(1). The GAL bases her collateral estoppel argument on a custody stipulation incorporated in the superior court's Memorandum Decision and Order in the divorce action which the parties entered into after three days of trial.

The superior court's Memorandum Decision and Order in the divorce action reads in relevant part as follows:

Their custody stipulation is in the form of a judgment, which—after review and discussion in chambers and in open court with the parties and the guardian ad litem—was approved and accepted by the court, and is incorporated here in the following paragraphs, ending with paragraph number 12:

"This matter having come before this court and the court having considered the testimony of the witnesses, in particular that of Dr. Claudia Foster, the court finds clear and convincing evidence that [T] was sexually abused by her father, Paul Nelson."

After the decree was entered in the divorce action, Nelson moved to set aside the custody stipulation and reopen the trial evidence. The superior court denied Nelson's motion. In so ruling, the superior court stated in part:

Accordingly, it is the court's view that the new evidence would not probably change the trial results and that there will be no injustice if the trial is not reopened.

The bottom line is that even with the after-acquired evidence of the experts, the evidence that Nelson molested his daughter, [T], remains compelling and clear and convincing. The after-acquired evidence *might* suffice to establish a reasonable doubt sufficient to justify an acquittal from criminal charges, but it does not begin to suffice to overcome the evidence against Nelson.

(Emphasis in original).

In our recent decision in *Nelson v. Jones*, 781 P.2d 964 (Alaska 1989), we held that the superior court did not abuse its discretion in denying Nelson's motions to reopen evidence and to set aside the custody—visitation provisions of the divorce decree. More specifically, in sustaining the superior court's holding that Nelson had failed to show duress in connection with his entering into the custody stipulation we said:

Paul asserted: "[My] attorney told me that if the court accepted Dr. Foster's testimony and there was no negotiated agreement on custody it was very likely that I would not see my daughter for a year." This assertion is directly contradicted by Paul's attorney. Further, the court had an opportunity to observe Paul at the drafting of the stipulation, commenting thereon in its decision.

*Id.* at 968.

In regard to the superior court's ruling concerning Nelson's motion to set aside the decree and for a new trial we held:

The court also found that "Paul's new evidence would not probably change the trial results." Although Paul's stipulation was not binding on the trial court, it nonetheless constituted evidence on the issue of abuse. *See McClain v. McClain*, 716 P.2d 381, 385–87 (Alaska 1986); *Cope v. Cope* [49 Or.App. 301], 619 P.2d 883, 887 (Or.App.1980), *aff'd* [291 Or. 412] 631 P.2d 781 (Or.1981). Taken in combination with the evidence at trial, its force would be difficult to counter. The affidavits offered by Paul are not equal to the test.

*Id.* (footnote omitted).

In consideration of the above we hold that Nelson is collaterally estopped from

litigating the issue of his sexual abuse of T. It follows that the evidence sought by Nelson is neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence as required by Civil Rule 26(b)(1).

We set forth the elements of collateral estoppel in *Shepherd v. Bering Sea Originals,* 578 P.2d 587 (Alaska 1978):

> While the general rule of res judicata applies to repetitious suits involving only the same cause of action it has been employed in situations where the second action between the same parties is upon a different cause or demand. But in the latter event the judgment in the prior action operates as an estoppel not as to matters which might have been litigated and determined, but only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. Res judicata is then more accurately referred to as collateral estoppel or estoppel by judgment.

*Id.* at 589 (quoting *State v. Baker,* 393 P.2d 893, 896–97 (Alaska 1964)). Application of these principles leads us to the conclusion that the issue whether Nelson sexually abused T was litigated at the superior court level, and that upon consideration of Nelson's custody stipulation and other evidence adduced both at the trial and post-trial, the superior court explicitly determined the issue adversely to Nelson.[4] Therefore we hold that the superior court did not err

in making any of the discovery rulings challenged in this petition.

AFFIRMED.

---

**4.** As noted above, one of the requirements of collateral estoppel is that the issue must have been actually litigated in the prior action. *Restatement (Second) of Judgments* § 27 (1982). An issue is actually litigated when it is "submitted for determination." *Id.* comment d at 255. The Restatement further states that an issue is not

> actually litigated if it is the subject of a stipulation between the parties. *A stipulation may, however, be binding in a subsequent action between the parties if the parties have manifested an intention to that effect.* Furthermore under the rules of evidence applicable in the jurisdiction, an admission by a party may be treated as conclusive or be admissible in evidence against that party in a subsequent action.

*Id.,* comment e at 257 (emphasis added).

In *Anderson, Clayton & Co. v. United States,* 562 F.2d 972 (5th Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978), the Fifth Circuit stated: "When one party ... concedes or stipulates the issue upon which the court bases its judgment, the issue is not conclusively determined for purposes of collateral estoppel *unless it is clear that the parties so intended." See also Balbirer v. Austin,* 790 F.2d 1524, 1527–28 (11th Cir.1986).

We conclude that a remand is not necessary for the purpose of ascertaining the parties' intent as to the effect of the custody stipulation. As noted above, our review of the record in the divorce proceeding persuades us that the issue of Nelson's sexual abuse of T was actually litigated in that proceeding.