[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on July 18, 1981. At that time, the defendant husband finished medical school, completed five years of surgical residency, and, in June of 1988, the parties moved to Sharon, Connecticut, where the defendant husband joined a surgical group. During their marriage, the parties had three children: James Cummins Hutchings, born July 9, 1983; Samuel Dewey Hutchings, born October 2, 1985; and Karen Marie Hutchings, born March 20, 1991. This action for legal separation was brought on October 23, 1990, and the parties separated in November of 1990.
During the course of the marriage, the plaintiff wife developed several medical conditions, including migraine headaches, gastroenteritis of unknown origin, and a recurrence of her pre-existing condition of lupus. The primary symptoms were severe headache and nausea. The plaintiff wife also had the full time care of two young children. During the late 1980's, the defendant husband began to prescribe medicine for the plaintiff-wife. The plaintiff wife was also being treated by several doctors in the Sharon area who were also prescribing for her. The plaintiff wife alleges in the Third Count of her complaint that between approximately January of 1988 and May of 1990, the defendant husband prescribed for and otherwise obtained and personally gave to the plaintiff wife a grossly excessive course of drugs. The plaintiff wife further alleged that the amount, sequences, and nature of these drugs were such that the plaintiff wife was bedridden the majority of her time during an approximately eighteen CT Page 1872 month period. Toward the end of this period, the defendant husband allegedly began telling the plaintiff wife that she was crazy, a drug addict, and was not a good wife or mother. The plaintiff wife was also allegedly isolated in her bedroom and sometimes not being offered dinner. Allegedly, during this time the plaintiff wife was severely sedated because of the medication, often crying after the defendant husband's insults, much of which went on in front of the children.
In April and May of 1990, the plaintiff wife, allegedly went to her primary physician in Sharon, who at the time had discovered the extent of the husband's prescribing regimen, compared it with the prescribing that he and other doctors had done. Subsequently, the plaintiff wife stopped taking the defendant husband's medications.
The plaintiff has moved to join the tort claims with the action for legal separation. The plaintiff asserts that all causes of action between the parties should be joined for the purpose of consolidating and completing the litigation between the parties in one action.
The defendant, on the other hand, argues that joinder of the interspousal tort claim should not be joined with the action for dissolution because the divorce action would be delayed for several years while the tort action is processed; another attorney would have to be hired to litigate the the tort action; the dissolution action would be impossible to settle because of the joined tort action, mainly because other parties would have to be joined.
Generally, a plaintiff may include in the complaint several independent causes of action. General Statutes Section 52-97(7). In order to join more than one cause of action the Practice Book requires that they be "upon claims, whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject of action." Practice Book Section 133(7).
"Transactions" which may be joined are defined as those "which grew out of the subject matter in regard to which the controversy has arisen." Practice Book Sect. 134. Moreover, causes of action for legal or equitable relief may be joined in the same action. Practice Book Section 136.
The purpose of joinder is to "enable parties to settle all their controversies in a single action." Veits v. Hartford, 134 Conn. 428, CT Page 1873 436, 58 A.2d 389 (1948). The general policy of the law is to resolve related controversies in one action and is the premise upon which legal and equitable actions may be joined. Veits, supra.
The term "cause of action" as used with reference to joinder has been defined as "a single group of facts out of which arises one or more rights to relief." Fairfield Lumber Supply Co. v. Herman, 139 Conn. 141, 147, 90 A.2d 884 (1948). The term "transaction" as used in this context:
 is therefore to be construed as men commonly understand it, when applied, as in our Practice Act it certainly is applied to any dealings between the parties resulting in wrongs, without regard to whether the wrong be done by violence, neglect or breach of contract. It seems to us hardly to be doubted that any ordinary man would consider everything stated in the complaint as properly belonging to a narrative of the whole transaction between the parties, and necessary for the information of one who was to form a judgment as to their respective rights.
Craft Refrigerating Machine Co. v. Quinnipiac Brewing Co., 63 Conn. 551,561, 29 A. 15 (1893).
The Connecticut courts have allowed joinder of another cause of action with a divorce action as long as the claim is connected with the matter in controversy under the plaintiff's complaint and that its consideration may be necessary for a full determination of the rights of the parties. Defelippi v. Defelippi, 23 Conn. Sup. 352,353, 183 A.2d 630 (1962). In support of this conclusion the court held that the additional claim was "necessarily connected with and dependant upon the marital relationship", "that it was "relevant and material" to the issue of cruelty previously alleged in the divorce action and that the facts constituted a single transaction as originally defined in Craft. Id.
The Connecticut courts have also allowed joinder of a third party defendant in a divorce proceeding to promote the policy of "the desirability of avoiding multiple suits and of granting complete relief in a single proceeding." Gaudio v. Gaudio, 23 Conn. App. 287,293, 580 A.2d 1212 (1990). The Connecticut courts have not, however, addressed the issue of whether an interspousal tort claim should be joined with a dissolution proceeding. CT Page 1874
With varying levels of enthusiasm, a number of recent cases from different states hold that a victim spouse will be allowed to litigate an interspousal tort claim in a subsequent separate action. Abbott v. Williams, 888 F.2d 1550 (11th Cir. 1989) (interpreting Alabama law); Nelson v. Jones, 787 P.2d 10-31 (Sup. Ct. Alaska 1990); de la Croix de Lafayette v. de la Croix de Lafayette, 15 Fam. L. Rep. (BNA) 1501 (D.C. Super. Ct. Aug. 14, 1989); Stuart v. Stuart, 143 Wis.2d 377, 421 N.W.2d 505 (1988); McCoy v. Cooke, 165 Mich. App. 662, 419 N.W.2d 44 (1988); Noble v. Noble, 761 P.2d 1369 (Sup.Ct. Utah 1988); Heacock v. Heacock,402 Mass. 21, 520 N.E.2d 151 (1988); Simmons v. Simmons, 773 P.2d 602
(Colo.Ct.App. 1988); Nash v. Overholser, 114 Idaho 461, 757 P.2d 1369
(Sup.Ct. Vt. 1988); Aubert v. Aubert, 529 A.2d 909 (S. Ct. N.H. 1987); McNevin v. McNevin, 447 N.E.2d 611 (Ct.App.Ind. 1983).
In effect, these courts exempt an interspousal tort claim from the basic principle of res judicata: a party should not be allowed to relitigate a matter that it already had the opportunity to litigate. These courts reason that the spouses divorce and tort claims are separate and independent causes of action that do not have to be joined in a single proceeding. Typical is a recent pronouncement of the Massachusetts Supreme Judicial Court:
 A tort action is not based on the same underlying claim as an action for divorce. The purpose of a tort action is to redress a legal wrong in damages; that of a divorce action is to sever the marital relationship between the parties, and, where appropriate, to fix the parties' respective rights and obligations with regard to alimony and support, and to divide the marital estate. Although a judge in awarding alimony and dividing marital property must consider among other things, the conduct of the parties during the marriage, the purpose for which these awards are made do not include compensating a party in damages for injuries suffered. The purpose of an award of alimony is to provide economic support to a dependent spouse, that of the division of marital property is to recognize and equitably recompense the parties' respective contributions to the marital partnership. CT Page 1875
Heacock v. Heacock, 402 Mass. 21, 520 N.E.2d 151, 153 (1988).
A significant minority of courts, however, do not concur in the "different causes of action" analysis. Rather, applying the "same transaction" test, (See Restatement (Second) of Judgments 24(1) (1982)), they hold that a subsequently filed interspousal tort action is barred by res judicata. Smith v. Smith, 530 So.2d 1389
(Sup.Ct. Ala. 1988); Kemp v. Kemp, 723 S.W.2d 138 (Ct.App.Tenn. 1986); Tevis v. Tevis, 79 N.J. 422, 400 A.2d 1189, 1196 (1979). Cf. Boronow v. Boronow, 71 N.Y.2d 284, 519 N.E.2d 1375, 525 N.Y.S.2d 179
(1988) (ex-spouse generally precluded from raising questions of title to property in a subsequent action if full and fair opportunity to litigate those questions in the divorce action); Partlow v. Kolupa, 122 App.Div.2d 509, 504 N.Y.S.2d 870 (1986), aff'd mem. 69 N.Y.2d 927, 509 N.E.2d 327, 516 N.Y.S.2d 632 (1987) (subsequent conversion action filed by wife barred by divorce judgment); Davis v. Dieujuste, 496 So.2d 806 (Fla.Sup.Ct. 1986) (property rights). These courts reason, in essence, that an action for divorce and a tort claim both evolve from a common factual nucleus and raise interrelated economic issues that should be resolved in a single proceeding. They view the parties and their marital relationship as the appropriate basic unit of litigation, not the different legal theories that can be placed on events that occurred during the marriage.
Connecticut has adopted the "transactional test" of the Restatement (Second), Judgments (1982). Orselet v. DeMatteo,206 Conn. 542, 545, 539 A.2d 95 (1988). The basic principle of the application of the res judicata doctrine is described as follows: "When a valid and final personal judgment is rendered in favor of the plaintiff: (1) [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof. . ." Restatement (Second), Judgments Sect. 18 (1982); see Orselet, supra, 545.
"Original claim" has been defined by the Restatement in Sect. 24(1): "[t]he claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second), Judgments Sect. 24(1); see Duhaime v. American Reserve Life Ins. Co., 200 Conn. 360, 364, 511 A.2d 333 (1986). "This test measures the preclusive effect of an earlier judgment, and will exclude not only claims which were asserted, but also those which could have been asserted." Duhaime, supra, 364 CT Page 1876
The broad application of res judicata allowing the joinder of an interspousal tort claim with a divorce proceeding will conserve judicial resources by concentrating all claims between the divorcing couple into a single proceeding. Judicial resources are finite and the number of cases that can be heard by the court is limited. Every dispute that is reheard means that another will be delayed. State court dockets are crowded and divorce litigation comprises a major portion of our caseload. The policy interest in conserving scarce judicial resources by concentrating all claims between the divorcing couple into a single proceeding is thus great and weighs in favor of a broad application of res judicata principles.
There is also a related social interest in reducing the private transaction costs (the most significant component of which is legal fees) of settling marital differences. Divorce is generally a zero sum economic transaction: there is not enough money in the marital settlement pot for both spouses to live postdivorce at the same standard of living as before the divorce. Increasing the transaction costs of the divorce settlement by reopening proceedings reduces further the total resources available for the postdivorce family to live on. The result of allowing a spouse to file his/her tort claim after the divorce settlement may be to transfer more money from one spouse to the other; the tortfeasor spouse, however, will be poorer, and both spouses lawyers will be richer.
Also weighing in favor of a broad application of res judicata is the policy of repose that underlies it. Divorce is a wrenching, all-consuming emotional experience, perhaps more so than the events underlying most other kinds of litigation. This is a more compelling argument when one recognizes the rights of the children who are caught in the fray of divorce. Their need for closure, and for a reestablishment of routine within their separated family is of critical importance. This necessary function of post-dissolution behavior requires disposition of all outstanding issues between the adult parties. The adult issues need resolution so that the parents can proceed to deal with the important task of responsible parenting post-dissolution. The courts must recognize this important step in a process of assisting children through their parents' divorce. In so doing, the court sends a critical message to adults concerning their responsibilities to their children. The parties well-being, and their continued productive functioning as members of society, require that their emotional stability be CT Page 1877 reestablished quickly and firmly by a final settlement of marital differences. See Boronow v. Boronow, 71 N.Y.2d 284, 290-91,519 N.E.2d 1375, 1378-79, 525 N.Y.S.2d 179, 183 (1988) (parties generally precluded from subsequently litigating questions of title to property if had full and fair opportunity to raise them in divorce action) ("Fragmentation in this area would be particularly inappropriate and counterproductive . . . a continuation of the relationship and of the conflict among parties to a matrimonial litigation would be particularly perverse. . . .").
Giving a spouse a second chance to raise an interspousal tort claim also means he/she need not disclose his/her intention to sue the tortfeasor spouse the first time around. The tortfeasor spouse thus has no opportunity to attempt to negotiate settlement of the tort claim as part of the divorce settlement. He/she has a more than colorable basis for arguing that the rules of procedure discourage the spouse and his/her lawyer from being fully candid in the divorce settlement negotiations.
Procedural rules reflect a vision of how parties in a dispute should communicate with each other. Allowing relitigation of issues that should have been resolved in the first divorce proceeding encourages the notion that divorcing spouses are allowed to "sandbag" each other by somewhat deceptive strategic behavior during divorce settlement negotiations.
The policies favoring a broad application of res judicata to bar subsequently filed interspousal torts must, however, be carefully balanced against the policies favoring justice in the individual case and practicality. In the past decade, our collective social consciousness has been raised to recognize the serious problems of spousal abuse and domestic violence. In Connecticut, as with many other jurisdictions, the doctrine of spousal immunity has been abrogated and therefore spouses may bring tort actions against each other. Silverman v. Silverman, 145 Conn. 663,666, 145 A.2d 826 (1958). Requiring a brutalized spouse to assert a claim for tort for harm inflicted during the marriage in a divorce action may, however, simply enrage the abuser more and cause the abused spouse more harm.
These concerns can be conceptually supported by the contention that the spouses claims for tort and divorce are so fundamentally different that they should not be joined in a single proceeding. The divorce claim is simply designed to sever the marriage with the other spouse and to determine the economic rights resulting CT Page 1878 therefrom. The tort action, in contrast, is designed to punish the tortfeasor spouse and compensate the victim because the tortfeasor breached the minimum standards of care and decency towards the victim-spouse required of all members of a civilized society, irrespective of marital status. Given these different purposes, it is arguable that the victim spouse's tort and the divorce claims should also be procedurally separate. Or, at the very least, joinder should be permissive, not mandatory.
Furthermore, problems of judicial administration arise should res judicata compel the joinder of tort and divorce action. The most prominent is the right to a jury trial. See e.g. Abbott v. Williams, 888 F.2d 1550, 1554 (11th Cir. 1989) (interpreting Alabama law); Stuart v. Stuart, 143 Wis.2d 377, 421 N.W.2d 505,508 (1988). Historically, divorce claims have been tried by a judge and tort claims decided by a jury. Inevitably, when divorce and tort claims are joined in a single proceeding, problems will arise as issues should be decided. Additionally, lawyers for plaintiffs in tort actions are allowed to charge contingent fees; lawyers in divorce actions are not.
Finally, overlaying tort litigation on divorce claims may make divorce litigation unmanageable. Some fear that requiring litigation of interspousal torts in a divorce action may undermine the policy premises of no-fault divorce. Simmons v. Simmons,773 P.2d 602 (Colo.Ct.App. 1988); Goldman v. Wexler, 122 Mich. App. 744,333 N.W.2d 121, 122 (1983). Fear of res judicata may encourage divorce litigants to scrape the "bottom of the barrel" and assert every conceivable tort claim that arose during the marriage. Divorce litigation will thus become more bitter and hostile than it already is. Cf. Nash v. Overholser, 114 Idaho 461, 757 P.2d 1180,1184-85 (Sup.Ct. Utah 1988) (concurring opinion) (almost never a convenient trial unit to combine tort and divorce action because joining them compounds bitterness and hostility of divorce and custody proceedings). But cf. Stuart v. Stuart, 143 Wis.2d 377,421 N.W.2d 505, 510 (1988) (concurring opinion) ("If at all possible, the parties in a divorce should best be able to terminate their relationships [in a single action]. They will have enough problems with the care, custody and support of children without having wounds reopened after the marriage is terminated regarding prior existing claims"). Others fear that divorce litigation will become unmanageable as tort claims and third parties are added to joined tort/divorce litigation. Stuart v. Stuart, 143 Wis.2d 377,421 N.W.2d 505, 507 (1988); Lord v. Shaw, 665 P.2d 1288, 1291 (Sup. Ct. Utah 1983). CT Page 1879
The expanded concepts of res judicata and the expanded divorce action have not, however, fully merged. Taken as a group, state courts are profoundly ambivalent about requiring the victim spouse to join his/her tort claim against the tortfeasor spouse with the divorce action. That ambivalence is expressed in different definitions of the scope of the res judicata effect given to divorce judgments.
Some courts acknowledge the same transaction test to be the governing standard, yet treat interspousal torts filed after a judgment of divorce as an exception to an otherwise "liberal [transactional] approach to what constitutes a cause of action." Aubert v. Aubert, 129 N.H. 422, 529 A.2d 909, 912 (1987) ("[N]arrow exception to [the] traditional interpretation . . . res judicata"). Accord, Nelson v. Jones 787 P.2d 1031 (Sup.Ct. Alaska 1990); Nash v. Overholser, 114 Idaho 461, 757 P.2d 1180, 1181 (1988). Still other courts articulate the same transaction test and apply it broadly to divorce judgments, treating them essentially the same for purposes of res judicata as judgments in other modern civil actions. E.g., Simmons v. Simmons, 773 P.2d 602 (Col. App. 1988) (concurring and dissenting opinion); Weil v. Lammon, 503 So.2d 830
(S. Ct. Ala. 1987); Tevis v. Tevis, 79 N.J. 422, 400 A.2d 1189,1196 (1979); Partlow v. Kolupa, 122 App.Div.2d 509, 504 N.Y.S.2d 870
(3d Dep't 1986), aff'd mem. 69 N.Y.2d 927, 509 N.E.2d 327,516 N.Y.S.2d 632 (1987).
The advantage of the same transaction analysis is that it emphasizes function, not form. It looks behind labels and compels careful and pragmatic analysis of the reasons and policies why disputes should or should not be combined into a single litigation unit. Applying it to divorce actions serves the basic purposes of modern divorce law and the policies of judicial economy and litigant repose.
Tort awards of compensatory damages generally consist of three components: (1) compensation for pain, suffering and actual physical harm; (2) compensation for lost income and medical expenses; and (3) compensation for loss of consortium. There are two possible overlaps between the compensatory damages award and economic relief in the divorce action. First, in Connecticut an unliquidated personal injury action is subject to an award pursuant to Section 46b-81 of the General Statutes. Raccio v. Raccio,41 Conn. Sup. 115, 122, 556 A.2d 639 (1987). Second, principles guiding jury awards of compensatory damages overlap with principles CT Page 1880 used by the divorce courts to distribute marital property and award maintenance to the injured spouse, raising the potential for double recovery.
In a majority of equitable distribution states personal injury awards are marital property. Specifically, the Superior Court decision in Raccio, supra, stands for the proposition that an unliquidated personal injury action may be subject to an alimony or equitable distribution award under General Statutes Section 46b-81. Other states, by statute, define personal injury awards as separate property. Indeed, some jurisdictions conceive of the tort action as an "asset" of the injured spouse that should be disclosed on the financial disclosure statements generally required in a divorce action. Heacock v. Heacock, 402 Mass. 21, 25 n. 3, 520 N.E.2d 151,154 n. 3 (1988). Finally, some states separate compensatory damages into components and hold that compensation for pain and suffering is separate property of the injured spouse, compensation for lost earnings is marital property, and compensation for loss of consortium is separate property of the uninjured spouse.
It is conceivable that the tortfeasor spouse might thus claim that some portion of the victim spouse's tort recovery belongs to the marital estate, or to him/her. The idea that the tortfeasor spouse is entitled to share in the victim spouse's recovery when: (a) he/she caused the injuries; and (b) he/she would not share in the recovery if the parties were not married, is, however, highly objectionable. It is possible to dismiss a tortfeasor spouse's claim on the principle that a tortfeasor should not profit from his/her own wrong. The victim spouse's personal injury award should thus be classified as his/her separate property, and the tortfeasor spouse should have no claim for loss of consortium.
Realistically, the tortfeasor spouse's payment of the tort award comes in the form of a higher percentage of the marital estate being awarded to the victim spouse or from the tortfeasor spouse's separate property, if he/she has any. The size of the tort award to the victim spouse is, however, potentially much greater than his/her share of the marital estate, since the tort award is not conceptually limited by the amount of assets available for distribution, or the tortfeasor spouse's income.
The danger of double recovery by the victim spouse arises, however, because economic awards in divorce judgments incorporate principles of compensation similar to those considered by juries in making personal injury awards. For example, Connecticut's CT Page 1881 equitable distribution statute requires the divorce court to consider the following factors in determining how to distribute marital property: the future financial circumstances of each party; the "age and health of both parties,"; "causes for dissolution"; "liabilities and needs of the parties". See General Statutes Section 46b-81. The potential overlap between tort compensatory damages and divorce economic awards is even more evident when the factors a Connecticut court must consider in setting an alimony award to the victim spouse are listed: the "age and health of both parties"; "the present and future earning capacity of both parties"; and "any other factor which the court shall expressly find to be just and proper."
The factual overlap between the grounds and remedies in the divorce and tort actions alone makes the spouses marriage and the victim spouses tort claim a "convenient trial unit," and thus outweigh non-joinder. The procedural inefficiency that results when the tort and divorce actions are not combined was illustrated in Simons v. Simons, supra.
In Simmons v. Simmons, supra, it took seven years and two appeals to get back to ground zero because the tort and divorce proceedings were not treated as a single litigation unit. The husband won a partial summary judgment in the separate divorce action based on an antenuptial agreement. The wife then won a large tort award after a separate jury trial, during which her lawyers argued that she should be granted a large tort award because the antenuptial agreement limited her recovery in the divorce action. The wife won a reversal of the divorce court's decision on the antenuptial agreement; the husband then won a reversal of the tort decision on the grounds of unfair prejudice due to the references to the antenuptial agreement before the jury. Thus, despite the extensive proceedings in both the divorce and tort actions, the Simmons' were no closer to finalizing their economic rights against each other than they were when they began. The result is a wasteful allocation of their own and society's limited resources for resolving disputes. The only people who profited from keeping the divorce and tort actions separate were the Simmons' lawyers.
Another principal barrier to the efficiencies of combination are fears that the victim spouse will lose his/her right to a jury trial in a combined proceeding.
The constitution of Connecticut, article CT Page 1882 first, Sect. 19, states that "[t]he right of a trial by jury shall remain inviolate. This particular provision of our constitution has been consistently construed by Connecticut courts to mean that if there was a right to a trial by jury at the time of the adoption of the provision, then that right remains intact. (Citations omitted). It is generally held that the right to a jury trial exists not only in cases in which it existed at common law and at the time of the adoption of constitutional provisions preserving it, but also exists in cases substantially similar thereto.
Skinner v. Angliker, 211 Conn. 370, 374, 559 A.2d 701 (1989).
The divorce statutes and practice in Connecticut place the fact-finding power in divorce cases in a judge, rather than a jury. The reasons that divorce practice takes place before judges, not juries is because distributing a marital estate often requires complex accounting of the parties' mutual claims against each other. Historically, such complex accounting was performed by equity, not law courts, not juries. Dobbs, Remedies Section 4.3 at 252-254.
Tort claims, which usually involve a single lump sum award are in contrast, classically "legal." A tort plaintiff is generally entitled to a jury trial. The problem thus arises about how to arrange a jury trial for the victim spouse's tort claim, while keeping the fact-finding for and administration of the divorce in the judge's hands.
No one, presumably, wants to add juries to divorce court in any major way. There are thus two realistic possibilities for managing the problems of jury trial in the victim spouse's combined tort and divorce action against the tortfeasor spouse: (1) try the tort claim before a jury first, then incorporate its factual findings and damage award in the judge's divorce decree; (2) have both the tort and divorce claims decided by a judge.
Connecticut, like the federal system, has merged law and equity into a trial court of general jurisdiction which is empowered to grant divorce and tort relief. See Practice Book Section. 136. In a merged court system, jury trial can be preserved in a single presentation of evidence for legal and equitable claims CT Page 1883 by simply mandating the order in which the claims are decided. In federal practice, absent compelling necessity, legal issues must be decided before equitable issues when the two are combined. A similar rule could be imposed in state practice for a combined divorce and tort action. See Noble v. Noble, 761 P.2d 1369, 1371
(1988) (where the Utah Supreme Court imposed such a rule for divorce and tort actions arising out of the same marriage, though it ruled that the two claims should proceed in separate lawsuits). The judge would make her divorce decision and distribution taking into account the jury's verdict and award of damages in the tort action.
A basic question of fairness is, however, raised by the problem. The victim spouse would be entitled to a jury trial on his/her tort claim if he/she were not married. There does seem to be something inherently unfair about denying the victim spouse a jury trial for the same claim simply because he/she is married and seeking both a divorce and tort judgment. The jury is the conscience of the community in tort cases, articulating and imposing minimum standards of civilized behavior. Since the policy decision has been made to allow married people to sue each other for tort, (see Silverman, supra,) the jury should perform the same function for married plaintiffs and defendants as for the unmarried. The victim spouse should get a jury trial on his/her tort claim, especially since it is entirely feasible for the legal system to provide it and still combine her divorce and tort actions.
Another concern about a combined divorce and tort action is that vital interim determinations, particularly custody issues, will be delayed while the combined action proceeds. See Stuart, supra, 421 N.W.2d 505, 507-509. Divorce courts are, however, empowered to make interim determinations on such issues on motion pending final judgment. Interim economic and custody judgments can be made rapidly without losing the administrative benefits of combining the divorce and tort action in a single proceeding for final judgment.
Moreover, should the combined action prove too difficult to manage either party could make a motion to sever claims for separate trial. See Practice Book Section 284. A court also has the power, in appropriate cases, to keep the combined divorce and tort action relatively simple by denying joinder of third parties and claims whose addition will complicate and delay the action because of marginal issues they interject. See Practice Book Sections 84, 85; General Statutes Sections 52-101, 52-102, 52-104; A. Secondino CT Page 1884 Sons v. LoRicco, 19 Conn. App. 8, 14, 561 A.2d 142 (1989). Discretionary judicial management of combined tort and divorce actions is a more useful method to deal with the problems that result from combining tort and divorce actions than absolute rules that treat them as different causes of action.
While spouses are adversaries, they, and society, have an important interest in candor in their settlement negotiations and complete resolution of all issues between them in a single negotiation or proceeding. As such the transactional approach is more morally compelling and socially useful than the claim based analysis or the exempting of interspousal tort claims from the principles of res judicata.
In the subject action, the parties, after some visitation problems, have settled into a routine involving the children. They have an established routine, and while not optional, it is a routine. The essential basis of the marital tort action in this case is so closely bound to the issues of the parties relationship and marriage, that on the facts compels the court to reject arguments as to delay.
Accordingly, the plaintiff's interspousal tort claim is joined and shall be presented in conjunction with the dissolution proceeding as part of the overall dispute between the parties in order to lay to rest all of their legal differences in one proceeding and avoid the prolongation and fractionalization of litigation.
Furthermore, the parties are ordered to appear for a status conference and scheduling orders with all counsel, both on the dissolution and tort claims at 9:15 a.m. on March 18, 1993.
DRANGINIS, J.