KAREN DELAHUNTY *v.* MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY ET AL.
(15240)

Peters, C. J., and Callahan, Borden, Katz and Palmer, Js.

Argued January 18—officially released April 9, 1996

*John R. Williams*, for the appellant (plaintiff).

*Barry S. Zitser*, for the appellee (defendant Patrick J. Delahunty, Jr.).

KATZ, J. This appeal raises the issue of whether the doctrine of res judicata bars a party to a dissolution action from bringing a postdissolution action against a former spouse for damages incurred as a result of conduct that had occurred during the marriage. We conclude that, in this context, the policy considerations commonly advanced to justify the doctrine of res judi-

cata are not compelling and that the application of that doctrine to bar the subsequent action would fail to achieve the doctrine's objectives.[1]

The following undisputed facts are pertinent to this appeal. In 1988, the plaintiff, Karen Delahunty, instituted an action against the defendant, Patrick J. Delahunty, Jr., to dissolve their marriage. On January 4, 1990, *Hon. John D. Brennan*, state trial referee, rendered judgment dissolving the marriage and delivered an oral decision.[2] Thereafter, on January 31, 1992, the plaintiff filed an eight count complaint against the defendant,[3] Vincent A. Clements, Jr., an insurance agent, and Massachusetts Mutual Life Insurance Company (Massachusetts Mutual), in connection with a $100,000 life insurance policy insuring her former husband, of which she was both the owner and the beneficiary.[4]

The complaint alleged the following facts. On July 22, 1987, the defendant notified Massachusetts Mutual of his desire to surrender the life insurance policy owned by his wife. Massachusetts Mutual thereafter forwarded the necessary forms to the defendant to effect the surrender and advised him of the relative merits of the surrender. The defendant or a third party acting under his direction forged the plaintiff's signature on the required forms. Following its cancellation of the

---

[1] Although our trial courts have had to confront this question in its various permutations; see, e.g., *Hutchings* v. *Hutchings*, Superior Court, judicial district of Litchfield, Docket No. 054449S (February 22, 1993) (8 Conn. L. Rptr. 433); this case presents the first opportunity for this court to decide the issue.

[2] This oral decision was transcribed into a sixty-three page memorandum of decision.

[3] For ease of discussion, hereinafter we will refer to Patrick J. Delahunty, Jr., the plaintiff's former husband, as the defendant, and we will refer to the other defendants by name.

[4] Because the trial court rendered summary judgment in favor of the defendant only, Massachusetts Mutual and Clements have no role in this appeal.

policy, Massachusetts Mutual forwarded to the defendant at his office a check in the amount of its cash surrender value, $7379.54, payable to the plaintiff. Thereafter, the defendant, acting alone or with Clements, forged the plaintiff's endorsement signature on the check and made the check payable to Guardian Life Insurance Company for the purpose of purchasing a life insurance policy to be owned by and for the benefit of the defendant. The aforementioned conduct occurred without the plaintiff's knowledge or authorization. The plaintiff further alleged that Clements, Massachusetts Mutual and the defendant fraudulently concealed those events from her and that she first learned of them in June, 1989, when she received a letter from a district manager at Massachusetts Mutual indicating that Massachusetts Mutual had surrendered the policy on September 2, 1987.

On the basis of those allegations, the plaintiff claimed that the defendant had engaged in fraudulent conduct that caused her mental and emotional pain, anguish and distress, and had knowingly, wilfully, intentionally, wantonly, maliciously and tortiously interfered with her contractual and beneficial economic relationship with Massachusetts Mutual. The plaintiff sought compensatory damages, punitive damages, treble damages for theft pursuant to General Statutes § 52-564[5] and double damages for forgery pursuant to General Statutes § 52-565.[6]

In his response to the complaint, the defendant claimed a lack of recollection sufficient to admit or

---

[5] General Statutes § 52-564 provides: "Treble damages for theft. Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[6] General Statutes § 52-565 provides: "Double damages for forgery. Any person who falsely makes, alters, forges or counterfeits any document, or knowingly utters, as true, any document falsely made, altered, forged or counterfeited, shall pay double damages to any party injured thereby."

deny some of the allegations, although he also denied any wrongdoing. Additionally, he asserted nine special defenses, including the claim that the plaintiff's action was barred by the doctrines of res judicata and collateral estoppel, all of which the plaintiff denied. Thereafter, the defendant moved for summary judgment claiming that, because in the prior dissolution action the plaintiff had claimed ownership of the proceeds of the insurance policy and had offered evidence regarding the circumstances under which the funds had come into the defendant's possession, the present action was barred by res judicata. In support thereof, the defendant submitted portions of the trial transcript from the dissolution proceedings, a transcript of the oral decision in that action and a memorandum of law.

The trial court, *Hadden, J.*, granted the defendant's motion for summary judgment on the basis of the following findings: the plaintiff had made a claim for the insurance policy funds in the dissolution action, asserting therein that the defendant had perpetrated a fraud; the defendant had been cross-examined in the dissolution action regarding the details of the transaction involving the insurance policy, including the validity of the negotiation of the check; the plaintiff had presented therein the actual check from Massachusetts Mutual to establish that the signature had been forged; the plaintiff had claimed that she had never received the proceeds of the check; and the trial court in the dissolution proceeding had determined responsibility for the breakdown of the marriage and had apportioned the marital estate based upon "all the evidence."

Against those findings the trial court applied the "transactional" test of § 24 of the Restatement (Second) of Judgments, in accordance with *Orselet* v. *DeMatteo*, 206 Conn. 542, 544, 539 A.2d 95 (1988), to decide whether the present action was barred by the doctrine

of res judicata.[7] The court recognized that courts in other jurisdictions that use the "transactional" test had barred actions similar to the one before it even when the plaintiff had not made a claim for the insurance policy funds in the dissolution action.[8] The court specifically noted, however, that its decision did not rely on those cases because "in this case the plaintiff did in fact make such a claim." The trial court then concluded that the dissolution proceeding was the proper forum for all causes of action arising out of the defendant's alleged misconduct and, consequently, that the tort action was barred by the doctrine of res judicata. Accordingly, the trial court granted the defendant's motion for summary judgment. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the case to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the plaintiff first argues that the trial court's determination that this matter was governed by the doctrine of res judicata was improper. The present action is a tort claim in which the plaintiff seeks a jury trial at which she could be awarded compensatory damages for emotional distress and economic loss, punitive damages for the defendant's intentional fraudulent conduct and statutory double and treble damages. She argues that she had no right to a jury trial in the dissolution action and, furthermore, that the court in the dissolution action sat as a court of equity without the authority to award the remedies she now seeks. The defendant responds that, even if we were to agree with the plaintiff that the trial court improperly relied

---

[7] The transactional test is discussed more fully in part I of this opinion.

[8] See, e.g., *Smith* v. *Smith*, 530 So. 2d 1389 (Ala. 1988); *Partlow* v. *Kolupa*, 122 App. Div. 2d 509, 504 N.Y.S.2d 870 (1986), aff'd, 69 N.Y.2d 927, 509 N.E.2d 327, 516 N.Y.S.2d 632 (1987); *Kemp* v. *Kemp*, 723 S.W.2d 138 (Tenn. App. 1986).

on res judicata to render summary judgment in his favor, we should nevertheless apply the doctrine of collateral estoppel to affirm the judgment. The plaintiff argues that collateral estoppel does not apply to bar the tort action because, although the check itself had been presented in the dissolution action as evidence relating to the pertinent insurance policy, and the plaintiff had attempted to elicit the defendant's admission to the forgery on cross-examination, the issue of the fraudulent endorsement was not part of the trial court's decision and was not necessary to that decision.[9]

We agree with the plaintiff that the trial court improperly invoked the doctrine of res judicata in this case. We also agree with the plaintiff that the trial court in the dissolution action did not make the necessary findings of fraudulent conduct by the defendant that would collaterally estop either party in the present action from litigating that issue and the issue of any damages should that become necessary. We will analyze separately the applicability of each of these two doctrines in the circumstances of this case.[10] We recognize,

---

[9] In light of the lengthy delay between the dissolution action and the commencement of the present action, neither party has requested that the trial court in the dissolution action articulate its findings relating to the alleged fraud.

[10] The standard of review of a trial court decision granting a motion for summary judgment is well settled and is not challenged in this case. Pursuant to Practice Book § 384, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment " 'has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law' "; *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See Practice Book § 381. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Connell* v. *Colwell,* 214 Conn. 242, 246–47, 571 A.2d 116 (1990).

however, that "[c]laim preclusion, sometimes referred to as res judicata, and issue preclusion, sometimes referred to as collateral estoppel, are first cousins. Both legal doctrines promote judicial economy by preventing relitigation of issues or claims previously resolved. *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985). *Scalzo* v. *Danbury*, 224 Conn. 124, 127, 617 A.2d 440 (1992)." (Internal quotation marks omitted.) *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 267, 659 A.2d 148 (1995).

I

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. *Cromwell* v. *County of Sac*, 94 U.S. 351, 352–53, 24 L. Ed. 195 (1876); 1 Restatement (Second), [supra] §§ 19, 25; James & Hazard, Civil Procedure (2d Ed.) § 11.3." *State* v. *Aillon*, 189 Conn. 416, 423–24, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983). The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it.

Additionally, the plaintiff does not challenge the trial court's ability to grant a motion for summary judgment when a party's claim is barred by res judicata. See *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 363, 511 A.2d 333 (1986). Her challenge is to the application of the doctrine in this case.

Furthermore, the parties do not dispute the right of one spouse to sue his or her spouse or former spouse. See *Dzenutis* v. *Dzenutis*, 200 Conn. 290, 294, 512 A.2d 130 (1986) (rule of spousal immunity has been abolished in Connecticut); *Silverman* v. *Silverman*, 145 Conn. 663, 666, 145 A.2d 826 (1958).

"We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . *Orselet* v. *DeMatteo,* [supra, 206 Conn. 545–46]; see *Duhaime* v. *American Reserve Life Ins. Co.,* 200 Conn. 360, 364–65, 511 A.2d 333 (1986); see also *Nevada* v. *United States,* 463 U.S. 110, 130–31 n.12, 103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983); 1 Restatement (Second), [supra, § 24]. In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action. See, e.g., *Nevada* v. *United States,* supra, 131–34; *Capraro* v. *Tilcon Gammino, Inc.,* 751 F.2d 56, 57 (1st Cir. 1985)." (Internal quotation marks omitted.) *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.,* 227 Conn. 175, 189–90, 629 A.2d 1116 (1993).

"We recognize that the mere explication of the doctrine of claim preclusion does not resolve all difficulties which may appear at the point of application. As was stated long ago, the law of estoppel by judgment is well settled, the only difficulty being in its application to the facts. *Pelham Hall Co.* v. *Carney,* 27 F. Sup. 388, 390 (D. Mass. 1939). The difficulty has always been in determining what matters are precluded by the former

adjudication. . . . In applying the rule of claim preclusion, the critical question is how broad a definition to give to the term 'same claim' or 'cause of action.' The broader the definition, the broader the scope of preclusion. James & Hazard, [supra] § 11.7, p. 540; see *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation*, 402 U.S. 313, 327, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971)." (Internal quotation marks omitted.) *State* v. *Ellis*, supra, 197 Conn. 463–64.

Finally, we recognize that a decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close; 1 Restatement (Second), supra, § 24, p. 199; and the competing interest of the plaintiff in the vindication of a just claim. We have stated that res judicata "should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. . . . We review the doctrine of res judicata to emphasize that its

purposes must inform the decision to foreclose future litigation. The conservation of judicial resources is of paramount importance as our trial dockets are deluged with new cases daily. We further emphasize that where a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding. But the scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Citations omitted; internal quotation marks omitted.) *State* v. *Ellis*, supra, 197 Conn. 465–67.

We are guided by these principles in deciding whether a party can bring a postdissolution action claiming damages for misconduct that had occurred during the marriage. We conclude that the policy considerations commonly advanced to justify the doctrine of res judicata are not compelling in this context and that it would be an inappropriate application of the principles of res judicata to require tort actions based on claims arising between married persons to be litigated in a dissolution proceeding. Furthermore, because there are significant differences between a tort action and a dissolution action, the maintenance of a separate tort action will not subject the courts and the defendant to the type of piecemeal litigation that the doctrine was intended to prevent.

A tort action, the purpose of which is to redress a legal wrong by an award of damages, is not based on the same underlying claim as an action for dissolution, the purpose of which is to sever the marital relationship, to fix the rights of the parties with respect to alimony and child support, and to divide the marital estate.[11]

---

[11] As part of a dissolution action, the trial court may assign to either party all or any part of the estate of the other and may order either to pay alimony to the other. General Statutes §§ 46b-81 (a) and 46b-82. The purpose of property assignment is to divide equitably the ownership of the parties' property; *McPhee* v. *McPhee*, 186 Conn. 167, 170–71, 440 A.2d 274 (1982); while an award of periodic and lump sum alimony is based primarily upon

Although in a dissolution action, the trial court must consider the conduct of the parties, the judgment in a dissolution action does not provide direct compensation as such to a party for injuries suffered during the marriage. Alimony is intended to provide economic support for a dependent spouse, and the division of marital property is intended to recognize and equitably recompense the contributions of the parties to the marital partnership. Tort actions and dissolution actions lack the duplication that the doctrine of res judicata was aimed at preventing. Additionally, a dissolution action is equitable in nature and requires a trial to the court, while a civil trial of a claim for damages based upon conduct occurring during the marriage is legal in nature, may involve the right to punitive damages and may, as in this case, involve the right to a jury trial. Furthermore, a dissolution action *generally* will involve few witnesses, while a civil action may involve numerous witnesses as well as other parties, such as insurance carriers.

---

a continuing duty to support. *Blake* v. *Blake*, 211 Conn. 485, 498, 560 A.2d 396 (1989); *Hotkowski* v. *Hotkowski*, 165 Conn. 167, 170, 328 A.2d 674 (1973); see *Smith* v. *Smith*, 185 Conn. 491, 493, 441 A.2d 140 (1981); *Wood* v. *Wood*, 165 Conn. 777, 784, 345 A.2d 5 (1974); 2 W. Nelson, Divorce and Annulment (2d Ed. Rev. 1961) § 14.06. In fixing the nature and value of the property assigned, and in determining whether alimony will be awarded, and the duration and amount of the award, the court "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate" and needs of each of the parties. General Statutes §§ 46b-81 (c) and 46b-82. "With respect to property assignment the trial court must also consider the liabilities of the parties, 'the opportunity of each for future acquisition of capital assets and income . . . [and] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.' General Statutes § 46b-81 (c)." *McPhee* v. *McPhee*, supra, 171. Finally, the court must make orders of custody; General Statutes § 46b-56 et seq.; and child support. General Statutes §§ 46b-84 and 46b-215a. The custody determination is guided by the best interests of the child. See *Gallo* v. *Gallo*, 184 Conn. 36, 42, 440 A.2d 782 (1981). Child support is based on the duty of the parents to maintain their minor children and is determined by a variety of factors including, but not limited to, the

Consideration of the policies underlying the doctrine of res judicata persuades us that, although unsatisfactory consequences may flow from a decision rejecting its application, recognizing the doctrine in this context would create greater problems than it would solve. If claim preclusion were applied to a postdissolution tort action, there would be a strong incentive to parties in a dissolution action to raise and litigate every marital grievance that might later form the basis of a possible tort action, for fear of forfeiting the ability to do so later in the form of a tort action. In other words, if we were to hold that claim preclusion bars the assertion of a postdissolution tort action based on conduct that had occurred during the marriage on the ground that it could have been raised during the dissolution action, the clear message to lawyers and parties would be to raise in the dissolution action all such claims for fear of forfeiting any future cause of action. This, in turn, would tend to make contested dissolution actions even lengthier and more acrimonious and expensive than they already are. Such a decision by this court could also tend to discourage settlement of dissolution actions, because it would send the same message to the parties. All this, in turn, would further harm families, including the children, who are already experiencing extraordinary emotional pain from the dissolution actions, and would be contrary to our established policy to foster amicable marital dissolutions whenever possible.

The concerns expressed in this opinion are also reflected in the jurisprudence of several of our sister states that have wrestled with this issue.[12] In *Stuart* v. *Stuart*, 143 Wis. 2d 347, 349, 421 N.W.2d 505 (1988), the

needs of the child and level of income of the parents. See the criteria for such awards established in General Statutes §§ 46b-84, 46b-86, 46b-130, 46b-171, 46b-172, 46b-198, 46b-215 and 46b-215b.

[12] Although we recognize that some states have applied the doctrine of res judicata to bar a postdissolution tort action; see footnote 8; we are not persuaded by the reasoning of those decisions.

Wisconsin Supreme Court considered whether public policy requires that one party, in that case the wife, join with the dissolution action her tort action against her husband for assault, battery, and intentional infliction of mental distress arising from alleged incidents occurring during the marriage. In affirming the decision by the Wisconsin Court of Appeals that joinder of an interspousal tort action with the dissolution action was not required, the Wisconsin Supreme Court relied on much of the lower court's analysis. "If an abused spouse cannot commence a tort action subsequent to a divorce, the spouse will be forced to elect between three equally unacceptable alternatives: (1) Commence a tort action during the marriage and possibly endure additional abuse; (2) join a tort claim in a divorce action and waive the right to a jury trial on the tort claim; or (3) commence an action to terminate the marriage, forego the tort claim, and surrender the right to recover damages arising from spousal abuse. To enforce such an election would require an abused spouse to surrender both the constitutional right to a jury trial and valuable property rights to preserve his or her well-being. This the law will not do. Although joinder is permissible, the administration of justice is better served by keeping tort and divorce actions separate. . . . Divorce actions will become unduly complicated if tort claims must be litigated in the same action. A divorce action is equitable in nature and involves a trial to the court. On the other hand, a trial of a tort claim is one at law and may involve, as in this case, a request for a jury trial. Resolution of tort claims may necessarily involve numerous witnesses and other parties such as joint tortfeasors and insurance carriers whose interests are at stake. Consequently, requiring joinder of tort claims in a divorce action could unduly lengthen the period of time before a spouse could obtain a divorce and result in such adverse consequences as delayed child custody and support determi-

nations. The legislature did not intend such a result in enacting the divorce code." Id., 352–53, citing *Stuart* v. *Stuart*, 140 Wis. 2d 455, 466–67, 410 N.W.2d 632 (Wis. App. 1987).

In *Nash* v. *Overholser*, 114 Idaho 461, 757 P.2d 1180 (1988), the Idaho Supreme Court cited *Stuart* v. *Stuart*, supra, 143 Wis. 2d 347, with approval in deciding a similar question. In *Nash*, the parties had entered into a stipulation relating to the disposition of their property and the court entered a decree of divorce in accordance with the stipulation in March, 1985. *Nash* v. *Overholser*, supra, 461. In January, 1986, the plaintiff wife filed an action against her former husband alleging five instances of assault and battery that had occurred during the marriage. Id. Four of the counts were barred by the statute of limitations, but the fifth count, which was not barred, was "the most significant of the instances of abuse." Id. The defendant moved for summary judgment on the ground that all five counts were barred by the doctrine of res judicata because the allegations of assault and battery could have been addressed by the court that had adjudicated the dissolution. Id., 461–62. The trial court denied the motion, stating that the dissolution action was not the proper proceeding in which to raise the tort claims. Id., 462. The Supreme Court of Idaho affirmed the judgment of the trial court concluding that, although Idaho trial courts have the jurisdiction while handling dissolution proceedings to address and resolve issues of intentional wrongful conduct that occurred during the course of a marriage, because of considerations unique to cases such as *Nash*, a narrow exception to that court's traditional interpretation of res judicata was warranted.[13] Id., 462–63. Citing

[13] The concurring opinion in *Nash* v. *Overholser*, supra, 114 Idaho 465, stated that the case would be more appropriately disposed of by holding that the assault and battery was not part of the same transaction that had been involved in the dissolution action. Relying on the "pragmatic" approach discussed in § 24 of the Restatement (Second), supra, Justice Johnson, with

to the same three equally unacceptable alternatives to which the wife would be subjected if it did not create an exception; *Stuart* v. *Stuart*, supra, 143 Wis. 2d 352; the Idaho Supreme Court reasoned that divorce proceedings should not serve as a catalyst for additional abuse. *Nash* v. *Overholser*, supra, 462. Finally, the court noted that there is no right to a jury in dissolution proceedings and concluded that "[a] former spouse should not be required to forgo [the] right to [a] jury trial simply to satisfy the doctrine of res judicata, particularly [when] the objectives of that doctrine do not compel such a result." Id.

In *Nelson* v. *Jones*, 787 P.2d 1031 (Alaska 1990), the Alaska Supreme Court decided that the doctrine of res judicata did not bar a postdissolution action by a husband for abuse of process, malicious prosecution and defamation based upon his former wife's allegations of sexual abuse of their child although the "causes of action . . . [arose] out of some of the transactional events of the divorce." (Internal quotation marks omitted.) Id., 1034. Relying on *Stuart* and *Nash*, the court concluded that it would be an inappropriate construction of the principles of res judicata to require tort claims between spouses to be litigated in a dissolution proceeding.[14] Id., 1034–35.

We recognize the need for finality between parties in a divorce proceeding. They should, if at all possible,

whom Justices Bistline and Huntley concurred, stated that "pragmatically, the assault and battery did not constitute part of the transaction out of which the divorce action arose. . . . The transaction involved in the divorce action was the marriage. The transaction involved in the present action was the assault and battery. They are not part of the same transaction according to the factual grouping provided for in the Second Restatement . . . ." *Nash* v. *Overholser*, supra, 465.

[14] Other cases in which courts have concluded that interspousal tort actions should not be litigated in divorce proceedings include *Windauer* v. *O'Connor*, 107 Ariz. 267, 485 P.2d 1157 (1971), and *Lord* v. *Shaw*, 665 P.2d 1288 (Utah 1983).

be able to terminate their relationships.[15] The purpose of the doctrine of res judicata, however, must inform the decision to foreclose future litigation. We are convinced that, as a practical matter, applying the doctrine of res judicata in this context would unduly complicate the dissolution action and consequently unnecessarily delay essential child custody and support determinations. Although our decision leaves open the potential for the disgruntled marital litigant to continue to fight the marital battles on the tort battleground, it also enables parties to resolve their dissolution action in less time and with far less acrimony. With these considerations in mind and borrowing from the experience of other jurisdictions, we conclude that the doctrine of res judicata does not require all issues between spouses to be litigated in the dissolution proceeding. Accordingly, we hold that the doctrine of res judicata does not apply to this tort action and, to the extent that the trial court relied on that doctrine to grant the defendant's motion for summary judgment foreclosing the plaintiff from litigating her claim that the defendant had perpetrated a fraud in connection with the cancellation of an insurance policy during their marriage, that reliance was improper.

## II

The defendant claims alternatively that, even if we conclude that the trial court improperly rendered summary judgment in his favor because res judicata does not apply to bar the separate tort claim, we should nevertheless apply the doctrine of collateral estoppel to preclude relitigation of an issue raised and decided in the dissolution action. Specifically, the defendant argues that the plaintiff raised and litigated the issue of

---

[15] "They will have enough problems with the care, custody and support of children without having wounds reopened after the marriage is terminated regarding prior existing claims." *Stuart* v. *Stuart*, supra, 143 Wis. 2d 357 (Steinmetz, J., concurring).

his alleged fraudulent conduct involving the insurance policy in the dissolution proceeding and that the trial court in that action made certain findings that demonstrated that it had considered that conduct in its property award. We are unpersuaded.

The defendant relies on the following facts to support his claim. The plaintiff had complained during the dissolution action that the defendant had wrongfully received $7379.54 from a life insurance policy that had insured his life for $100,000 and for which she had been named the beneficiary. In the distribution of marital assets, the plaintiff received assets worth $1,178,131, as compared to the defendant's award of assets worth $1,103,593. Those figures were intended to reflect the trial court's assessment of fault for the marital breakdown that had been determined on the basis of "all of the evidence." Included in the assets awarded to the plaintiff was the $40,000 cash surrender value of the defendant's new life insurance policy, which had been purchased, in part, with the money received from the policy that is the subject of this litigation. Additionally, the court ordered the defendant to pay to the plaintiff $440 per week in alimony for a nonmodifiable term of nine years, and to maintain life insurance in the amount of $206,000, with the plaintiff as the irrevocable beneficiary, during that nine year period. Although the defendant could reduce the face amount of the policy annually to reflect alimony payments made, at no time could the face value be less than the total amount of alimony he still owed. On the basis of those facts, the defendant argues that the doctrine of issue preclusion applies because the court's orders in the dissolution action indicated that the court had considered the purported fraudulent endorsement in its property award.

The plaintiff argues in response that, although collateral estoppel does apply in theory, the trial court in the dissolution proceeding did not make findings that

would support its application. Although evidence had been presented in the dissolution action regarding the alleged forgery and theft, the trial court never mentioned the fraudulent endorsement issue in its lengthy decision. Consequently, the plaintiff asserts that the issue was not a part of the decision and was not necessary to that decision. Moreover, the plaintiff points out that the trial court's finding that the defendant was "ever so slightly" more at fault than the plaintiff for the marital breakup, which contributed to the 54 percent to 46 percent division of the marital property, would, if anything, have worked in her favor to preclude the defendant from contesting the fraudulent endorsement issue, rather than to contribute to a judgment in the defendant's favor. We agree with the plaintiff.

"For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action*. It also must have been actually decided and the decision must have been necessary to the judgment. . . . An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), [supra, § 27, comment (d)]. An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, supra, (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), [supra, § 27, comment (h)]." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 714–15, 627 A.2d 374 (1993).

To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue

sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case. In the judgment of the dissolution action between the parties before us, the trial court did not make any definitive findings of fact that would demonstrate resolution of any issue relating to the fraudulent endorsement. Consequently, the issue of the fraudulent endorsement was not "actually litigated and necessarily determined" in the dissolution action. In the absence of the necessary predicate for a finding of collateral estoppel, we, therefore, need not decide the extent to which this doctrine is applicable to bar relitigation of a claim of tortious misconduct that had been fully litigated in an earlier dissolution action.

We note that courts in other states have considered whether parties can be collaterally estopped from litigating an issue in a subsequent civil action for damages based on conduct that had occurred during their marriage when that issue had already been determined in a prior dissolution action. See, e.g., *McCoy v. Cooke*, 165 Mich. App. 662, 667, 419 N.W.2d 44, appeal denied, 430 Mich. 897, 494 N.W.2d 784 (1988) (because trial court in dissolution action had determined that defendant had battered plaintiff during their marriage, collateral estoppel could be applied properly to prevent defendant from denying that assaults had occurred); *Nelson v. Jones*, supra, 787 P.2d 1035–36 (collateral estoppel was properly applied to preclude plaintiff husband from litigating issue of sexual abuse of his child in civil action against former wife for malicious prosecution, defamation and abuse of process because issue of sexual abuse had been litigated in divorce proceeding and, based upon consideration of custody stipulation between parents and testimony of expert witnesses, trial court in dissolution proceeding had explicitly determined issue adversely to him). It may be that,

relitigation entirely but will affect the amount of damages to be recovered. We leave these issues to be decided at a time when they are properly before us, at which time we will be required to balance many of the same policies that we have discussed, as well as other policies that may be implicated particularly by the doctrine of collateral estoppel.

This case has required us to decide whether the interest in the finality of judgments outweighs the other considerations that the plaintiff and courts in other states have expressed. Rather than complicate the dissolution action, unnecessarily delay crucial child custody and support determinations, and perhaps endanger lives in extreme cases, we will not *require* all claims and issues between married persons to be litigated in a dissolution proceeding.

The judgment of the trial court is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

[1] Although our trial courts have had to confront this question in its various