******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

TOBY A. BERTHIAUME *v.* STATE OF CONNECTICUT
(AC 41496)

Lavine, Devlin and Eveleigh, Js.

*Syllabus*

The petitioner, who had been convicted of the crime of burglary in the first degree, filed a petition for a new trial on the basis of newly discovered evidence regarding the alleged ulterior motives of a witness for the respondent state of Connecticut for testifying at the petitioner's criminal trial. Following his conviction, the petitioner filed a motion for a new trial on the basis of newly discovered evidence in his criminal case pursuant to the applicable rule of practice (§ 42-53). The criminal court denied the motion, concluding that the petitioner's evidence was insufficient to support his motion because, although the evidence was newly discovered, it was immaterial, cumulative and unlikely to produce a different result at trial. Thereafter, the petitioner brought the present action by filing in the trial court the subject petition for a new trial pursuant to statute (§ 52-270). The trial court granted the state's motion for summary judgment and rendered judgment in favor of the state, concluding that the petitioner's claim of newly discovered evidence had been fully and fairly litigated in the criminal proceeding, and, therefore, his petition was barred by res judicata. Subsequently, the petitioner, on the granting of certification, appealed to this court. *Held* that the trial court improperly rendered summary judgment in favor of the state on the basis of the preclusive effect of the proceeding in the criminal court, as the criminal court lacked the authority under the applicable rule of practice (§ 42-55) to rule on the petitioner's claim of newly discovered evidence; because § 42-55 requires that a petition for a new trial based on newly discovered evidence be brought only in civil court, the criminal court lacked the authority to rule on such a claim or to award the petitioner the relief he requested of a new trial, and, therefore, because the criminal court could not have rendered a valid, final decision on the petitioner's motion for a new trial, res judicata did not preclude the petitioner's petition for a new trial in the civil action.

Argued May 28—officially released September 3, 2019

*Procedural History*

Petition for a new trial following the petitioner's conviction of the crime of burglary in the first degree, brought to the Superior Court in the judicial district of Hartford, where the court, *Dewey, J.*, granted the respondent's motion for summary judgment and rendered judgment thereon, from which the petitioner, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Deborah G. Stevenson*, assigned counsel, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom were *Gail P. Hardy*, state's attorney, and *Thomas Garcia*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DEVLIN, J. This is an appeal from the summary judgment rendered by the trial court in favor of the respondent, the state of Connecticut, on a civil petition for a new criminal trial filed by the petitioner, Toby A. Berthiaume. This case presents an issue that our courts have not previously addressed: Whether res judicata precludes a civil petition for a new trial based on a claim of newly discovered evidence when that same claim previously was litigated before the criminal court that had jurisdiction over the criminal matter but nonetheless lacked the authority to adjudicate the claim under our rules of practice. We conclude that, because the criminal court lacked the authority to rule on such a claim, it could not have issued a valid final decision, and, thus, the court's rendering summary judgment on the basis of the preclusive effect of that proceeding was improper. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.[1]

Following a jury trial, the petitioner was convicted of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), and his conviction was affirmed on direct appeal. *State* v. *Berthiaume*, 171 Conn. App. 436, 438, 157 A.3d 681, cert. denied, 325 Conn. 926, 169 A.3d 231, cert. denied,      U.S.    , 138 S. Ct. 403, 199 L. Ed. 2d 296 (2017).

On direct appeal, this court set forth the following relevant facts. "In mid-2013, the victim, Simone LaPointe, was ninety-three years old and resided at 126 Windsor Street in Enfield, her home for over four decades. She suffered from dementia and short term memory loss, and although she lived alone, was accompanied by either a friend or one of her surviving eleven children 'most of the time.' Typically, the victim's friend stayed with her overnight, and her children took turns visiting her throughout the day. Despite this visitation schedule, there were gaps of time throughout the day in which the victim was home alone. Because the victim neither drove nor owned a car, her driveway would be empty during these gap periods, thus indicating that she was alone.

"On May 6, 2013, Marita Cunningham, one of the victim's daughters, arrived at 126 Windsor Street around noon, and departed, leaving the victim home alone, at approximately 12:50 p.m. When Cunningham left 126 Windsor Street, nothing inside the residence looked out of order and the victim was uninjured. About one hour later, Jessica Navarro-Gilmore, while passing by in a motor vehicle, saw the [petitioner] and another white man 'walking suspiciously' on a road near the victim's home while carrying what appeared to be 'a twenty inch flat screen . . . TV or monitor . . . .' The two men were 'walking quickly and looking over their shoul-

der[s] suspiciously.' Drawing on her own experience committing theft offenses, Navarro-Gilmore immediately suspected that the two men had stolen something from a home in the neighborhood. After doubling back to get a better look at the men, Navarro-Gilmore called the police at 1:53 p.m. and reported what she had seen.

"At approximately 3 p.m., the victim called Norma Shannon, another of her daughters, and told Shannon that her knee was bleeding. Shannon went to 126 Windsor Street in response to the call, and upon entering, noticed that 'the house had been ransacked . . . .' Various drawers and cabinets inside the house had been left open, jewelry and other items were lying on the victim's bed and dresser 'as if they had been dumped there,' and the dining room chandelier was broken. There was blood on the floor of the dining room, and the phone line in the living room, which was adjacent to the dining room, had been cut. The victim's knee was bandaged, and she had sustained a 'mark on her nose,' a bruise on her face, and a chipped tooth. A search of the home revealed that the victim's ring, which contained fourteen birthstones, and her nineteen inch flat screen television, had been stolen.

"At 3:44 p.m., the [petitioner] sold what was later determined to be the victim's ring and television at the Money Shop, a pawn shop and jewelry store located in Springfield, Massachusetts. In order to make the sales, the [petitioner] provided Jeffrey Fiske, the owner of the pawn shop, with his identification and had his photograph taken. The [petitioner] also provided his address, 116 Windsor Street, and telephone number. Fiske identified the [petitioner] as the person who received the sales proceeds.

"Thereafter, police showed Navarro-Gilmore a sequential photographic array that did not include a photograph of the [petitioner], and she did not identify anyone as one of the men she saw carrying the television on May 6, 2013. After developing the [petitioner] as a suspect, Detective Brian Callaghan of the Enfield Police Department searched the New England State Police Information Network, a database wherein local pawn shops record their daily transactions, which returned information on the Money Shop. On June 11, 2013, Fiske provided Detective Callaghan with sales slips, the [petitioner's] photograph, and the victim's television and ring.

"The [petitioner] was arrested on July 3, 2013, and charged with burglary in the first degree and several other offenses. Two days later, the [petitioner's] booking photograph, along with an article referencing the burglary, was published in the Enfield Patch, a local online newspaper. While browsing online, Navarro-Gilmore saw the [petitioner's] photograph and immediately recognized him as one of the men she saw carrying the television on May 6, 2013. Thereafter, Detective

Callaghan contacted Navarro-Gilmore to request that she view another photographic array. Navarro-Gilmore indicated that she already had seen the [petitioner's] photograph in the Enfield Patch and therefore could not fairly participate in an identification procedure." (Footnotes omitted.) Id., 438–41.

On June 10, 2014, after the jury's verdict, the trial court in the petitioner's criminal case, *Mullarkey, J.*, held a hearing originally intended for sentencing. Instead, the prosecutor notified the court that one of the state's witnesses, Navarro-Gilmore, recently had contacted the prosecutor's office seeking assistance regarding an arrest warrant for the witness' daughter. In response to this new information, the court postponed the sentencing and scheduled a subsequent hearing to allow the parties to question Navarro-Gilmore about this newly discovered information. Defense counsel then requested additional time to file a motion for a new trial.

On June 27, 2014, the court convened the first of a series of hearings regarding Navarro-Gilmore's telephone call to the prosecutor. Although defense counsel had not yet filed a motion for a new trial, she presented a number of witnesses to testify in support of this anticipated motion. Then, on August 8, 2014, defense counsel filed a petition for a new trial pursuant to Practice Book § 42-55 and General Statutes § 52-270. The petitioner sought a new trial on the basis of newly discovered evidence regarding Navarro-Gilmore's alleged ulterior motives in testifying. This prompted a lengthy colloquy in which the court discussed whether this petition was proper:

"The Court: All right. So, as we discussed before court, this [petition] needs to be filed with the civil clerk's office because it is a civil action. . . .

"[The Prosecutor]: Is it a civil motion for a new trial since he hasn't been sentenced yet?

"The Court: Well, [he's] filed a petition for new trial.

"[Defense Counsel]: I filed the petition under . . . Practice Book [§] 42-55, which is under the Superior Court rules for criminal matters and—which does not make any reference to its being a civil action. . . .

"The Court: Well, I wished it were under the criminal rules, or it remained under the criminal rules, but it doesn't. . . . All I'm telling you is the [rules of] practice [require] you to file it across the street, and I will go forward with whatever evidence you have today. And if you both agree, I will use the evidence that we have already heard on this issue. . . . And as long as the state goes along with that, we will treat it as evidence. All I can say to you is that I have no expertise in these civil concerns, but I have two or three others of these pending, and they are all filed across the street. . . .

"[Defense Counsel]: I will try to learn as soon and as much as I can about the proper way to file the motion. I'd just like to be clear—

"The Court: My—my job is to make the decisions based on the evidence, and the arguments, and the law, which I'm prepared to go forward with today, and you go over and square up whatever you have to do with those people. I don't interfere with them or their processes. . . .

"[The Prosecutor]: Your honor, I think the more appropriate motion is filed under [Practice Book §] 42-53, which is a motion for new trial.

"The Court: I'm not saying I disagree with you, but the [petitioner] has filed this motion. I cannot tell [him] what to file.

"[The Prosecutor]: I understand. But I think if it comes in as a petition for new trial, they don't have a perfected record for you to even entertain it because no—it's—it's not a disposed of matter. He hasn't even been sentenced yet. I believe the petitions require just that, and that's why it is separated from one to the other. And I think the court holds exclusive jurisdiction over a matter that is not yet sentenced. So, it wouldn't even be a civil filing where we would agree to this court hearing this.

"The Court: Well, there are a bunch of cases concerning this and there's a law annotation after . . . [§] 52-[2]70. But we'll worry about that at a later date. For now, there's a witness here subpoenaed by the defense and—or whatever you're gonna call it. I'd like to hear what the evidence is."

Subsequently, on November 26, 2014, defense counsel withdrew the petition for a new trial and, on December 17, 2014, filed a motion for a new trial pursuant to Practice Book § 42-53. The motion relied on the same evidence and same claims as the petition, i.e., that the petitioner was entitled to a new trial on the basis of newly discovered evidence regarding Navarro-Gilmore's alleged ulterior motives. After recognizing the new motion before it, the court granted defense counsel's motion to consider the testimony in the hearings prior to the filing of this new motion. At the close of testimony at this hearing, the parties offered their arguments on the motion for a new trial.

In the course of these arguments, there was a dispute over what legal standard should apply to decide a motion for a new trial. The prosecutor argued that "what the court needs to do is analyze the situation in the rubric provided by *Asherman* [v. *State*, 202 Conn. 429, 521 A.2d 578 (1987)]." Defense counsel argued that a "motion for [a] new trial shall be granted for any other error which the defendant can establish was materially injurious to him or her" under Practice Book § 42-53

(a) (2). On February 5, 2015, the court issued an oral decision denying the motion for a new trial. In its subsequent written memorandum of decision, the court applied the *Asherman* standard, as proffered by the prosecutor, to determine whether a new trial was warranted. The court concluded that the evidence, though newly discovered, was immaterial, cumulative, and unlikely to produce a different result at trial. On the basis of these findings, the court determined that the petitioner's evidence was insufficient to support the motion for a new trial and denied the motion.

On May 19, 2015, the petitioner commenced the present action by filing a petition for a new trial pursuant to § 52-270 in the civil trial court. Like the motions previously filed in the criminal court, this petition alleged that the new information regarding Navarro-Gilmore constituted newly discovered evidence that warranted a new trial. The state moved for summary judgment, asserting that the claim of newly discovered evidence had been fully and fairly litigated in the criminal proceeding such that the petition was barred by res judicata. The trial court, *Dewey, J.*, agreed and rendered summary judgment in favor of the state. This appeal followed.

Before addressing the merits of the petitioner's claim, we first set forth the proper standard of this court's review and certain well settled principles that guide our resolution of res judicata claims. The issue of whether res judicata applies "is a question of law subject to plenary review." *Independent Party of CT— State Central* v. *Merrill*, 330 Conn. 681, 712, 200 A.3d 1118 (2019). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Stamford Hospital* v. *Schwartz*, 190 Conn. App. 63, 97, 209 A.3d 1243 (2019).

"The doctrine of res judicata provides that [a] valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties . . . upon the same claim or demand. . . . Res judicata prevents a litigant from reasserting a claim that has already been decided on the merits. . . . Stated another way, res judicata is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . [W]here a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding." (Internal quotation marks omitted.) *Independent Party of CT—State Central* v. *Merrill*, supra, 330 Conn. 712–13.

The petitioner claims on appeal that, because Practice Book § 42-55 requires that petitions for a new trial

on the ground of newly discovered evidence may be brought only in the civil court, the criminal court lacked either the authority or jurisdiction to rule on a petition for a new trial and, consequently, its ruling can have no res judicata effect on the civil proceeding. This court has held that the improper filing of a petition for a new trial with the criminal court "[does] not deprive the court of subject matter jurisdiction . . . ." *State* v. *Gonzalez*, 106 Conn. App. 238, 261, 941 A.2d 989, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008). This court further explained, however, that "the trial court should not exercise its authority in cases . . . where a party fails properly to serve a writ of summons and complaint on the adverse party in accordance with Practice Book § 42-55." (Emphasis omitted; internal quotation marks omitted.) Id. Thus, the criminal court in this case had jurisdiction, but lacked the authority, to hear the petitioner's claim of newly discovered evidence. That determination, however, does not end our inquiry. We must now determine whether the lack of authority in the criminal court, in which the petitioner's claim for a new trial undisputedly was fully litigated,[2] deprives a petitioner of the opportunity to bring the same claim in a second court with the authority to decide the petition.

To resolve this complex issue, which has not been specifically addressed in Connecticut law, we begin with an examination of why the criminal court lacked the authority to grant the petitioner a new trial on the basis of a claim of newly discovered evidence. In the context of a petition for a new trial, courts are granted authority by statute. See, e.g., *Wojculewicz* v. *State*, 142 Conn. 676, 677, 117 A.2d 439 (1955) ("[p]roceedings in this state for procuring a new trial, whether in a civil or a criminal case, are controlled by statute"). General Statutes § 54-95 (a) authorizes defendants in criminal cases to file petitions for new trials in the same manner as in civil cases, and § 52-270 (a), which governs new trials in civil actions, provides in relevant part: "The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence . . . or for other reasonable cause, according to the usual rules in such cases. . . ."

Relatedly, Practice Book § 42-55 provides: "A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with General Statutes § 52-270. The judicial authority may grant the petition even though an appeal is pending." When claiming newly discovered evidence, a party cannot obtain a new trial except under Practice Book § 42-55. "*It is well established that to obtain a new trial on the ground of newly discovered evidence, a defendant must bring a petition under Practice Book § 42-55 . . . .*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 106 Conn. App. 260. Alternatively, a motion for a new trial brought pursuant to Practice Book § 42-

53 is limited to trial errors and cannot be based on newly discovered evidence. Id., 262.

Procedurally, a petition for a new trial is always brought in a separate civil proceeding, while a motion for a new trial is filed in the court in which the original proceeding was held. "The petition [for a new trial] is instituted by a writ and complaint served on the adverse party; although such an action is collateral to the action in which a new trial is sought, it is by its nature a distinct proceeding. The judgment on the petition terminates the suit which renders it final. On the contrary, a motion for a new trial is filed in a case then in progress or pending and is merely a gradation in that case leading to a final judgment." *State* v. *Asherman*, 180 Conn. 141, 144, 429 A.2d 810 (1980). For this reason, we have particularly stressed in the past that "the distinction between a petition and a motion is not one of mere nomenclature"; (internal quotation marks omitted] *State* v. *Gonzalez*, supra, 106 Conn. App. 262; and that "*the trial court should not exercise its authority in cases . . . where a party fails properly to serve a writ of summons and complaint on the adverse party in accordance with Practice Book § 42-55.*" (Emphasis in original; internal quotation marks omitted.) Id., 261.

Compliance with the summons and complaint requirements is not enough. We have held previously that even when a petitioner properly served a writ of summons and complaint in connection with a petition for a new trial, the petition was actually a motion for a new trial because the process was served under the same docket number as the original proceeding and "failed to institute a separate and distinct proceeding for the purpose of having the court determine whether a new trial was warranted . . . ." *Redding* v. *Ellfire*, 98 Conn. App. 808, 820, 911 A.2d 1141 (2006). Similarly, when the original trial court concludes that a motion for a new trial is brought on the basis of "newly discovered evidence, it lack[s] authority to consider the relief sought by the defendant in his motion pursuant to Practice Book § 42-53." *State* v. *Bennett*, 324 Conn. 744, 776–77, 155 A.3d 188 (2017).

Furthermore, it is never proper to bring a petition for a new trial based on a claim of newly discovered evidence in the criminal court. The procedural requirements of a writ of summons and complaint are not available in the criminal courts; this service is filed pursuant to the procedures of the civil courts. See Practice Book § 10-12. Relatedly, we have previously elaborated that "[i]n an action on a petition for a new trial, a petitioner is not a criminal defendant but rather is a *civil* petitioner. . . . A proceeding on a petition for a new trial, therefore, is not a criminal action. Rather, it is a distinct proceeding that is commenced by the service of civil process and is prosecuted as a civil action." (Citation omitted; emphasis in original.) *Small* v. *State*,

101 Conn. App. 213, 217, 920 A.2d 1024 (2007), appeal dismissed, 290 Conn. 128, 962 A.2d 80, cert. denied, 558 U.S. 842, 130 S. Ct. 102, 175 L. Ed. 2d 68 (2009).

In the absence of controlling precedent on the specific issue with which we are now faced, we turn to cases in which a court's authority has been discussed in conjunction with its jurisdiction and cases presenting analogous circumstances. Our Supreme Court has recognized the delineation between authority and jurisdiction and, moreover, that both are necessary for a valid decision. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999). Stated differently, although a court may properly exercise its subject matter jurisdiction in a given matter, its decision could nevertheless be invalid for want of authority if it exceeds its authority in awarding a remedy. *See New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004) ("Under [General Statutes] § 52-422, a trial court is empowered to grant injunctive relief during an ongoing arbitration proceeding only when such relief is 'necessary' to protect the rights of a party prior to the rendering of an award. Conversely, if such relief is not 'necessary' to protect a party's rights during the pendency of the arbitration proceeding, the trial court is not authorized to grant relief under § 52-422.").

Moreover, underlying the concept of res judicata are principles of finality and validity. 1 Restatement (Second), Judgments § 12, comment (a), p. 116 (1982). There is a strong jurisprudential interest in according finality to a decision in a proceeding where the parties have had a full opportunity to litigate the controversy on its merits. Id. Yet, the principle of finality rests on the premise that the proceeding had the sanction of law. Id. "The essential problem is therefore one of selecting which of the two principles [finality or validity] is to be given greater emphasis." Id., p. 117.

Our Supreme Court previously has addressed the distinction between authority and jurisdiction in the framework of res judicata, albeit specifically in the context of the family court. In *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 587–88, 674 A.2d 1290 (1996), the family court certainly had subject matter jurisdiction to adjudicate the dissolution matter; however, it did not have the authority to award certain remedies. In particular, the plaintiff sought punitive, double, and treble damages for fraud committed by her husband during their marriage. Id., 585. These claims required a jury trial, which was a procedure that was

not available to the plaintiff in her dissolution action. Id., 593. Thus, the plaintiff subsequently brought a second action in the civil court seeking these civil tort damages. Id. The civil court applied res judicata, reasoning that the tort claims could have been brought in the family court. Id., 586–87. Our Supreme Court, however, disagreed, concluding that "because there are significant differences between a tort action and a dissolution action, the maintenance of a separate tort action will not subject the courts and the defendant to the type of piecemeal litigation that [res judicata] was intended to prevent." Id., 592. The court stressed that the primary distinction between these actions was the difference in remedies. Id. "A tort action, the purpose of which is to redress a legal wrong by an award of damages, is not based on the same underlying claim as an action for dissolution, the purpose of which is to sever the marital relationship, to fix the rights of the parties with respect to alimony and child support, and to divide the marital estate. Although in a dissolution action, the trial court must consider the conduct of the parties, the judgment in a dissolution action does not provide direct compensation as such to a party for injuries suffered during the marriage. Alimony is intended to provide economic support for a dependent spouse, and the division of marital property is intended to recognize and equitably recompense the contributions of the parties to the marital partnership." (Footnote omitted.) Id., 592–93. In short, because the plaintiff in *Delahunty* could not obtain the same remedies in her dissolution action as she could in her tort action, she was not precluded by res judicata from bringing her second claim.

As in *Delahunty*, the petitioner in the present case could not obtain the relief that he requested from the criminal court—a new trial based on a claim of newly discovered evidence. To be sure, the hearings and the legal analysis that the petitioner seeks in the civil court may well be nearly identical to the proceedings in the criminal court. Moreover, having fully litigated his claim in the criminal court, the petitioner may arguably be a "litigant who is undeserving of the accompanying benefit that will redound to him." 1 Restatement (Second), supra, § 12, comment (d), p. 122. Nonetheless, the criminal court did not have the authority to decide the motion on its merits, nor to award the petitioner a new trial, and it, therefore, could not have rendered a valid, final decision on the motion for a new trial. For these reasons, res judicata does not preclude the petitioner's petition for a new trial here.[3]

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] On appeal, the petitioner raised the following five alternative reasons for reversing the court's judgment: (1) The state failed to meet its burden of proof for summary judgment, (2) structural error in the trial court resulted in prejudice per se, (3) because of public policy concerns, there should be

an exception to res judicata to protect against the type of errors that occurred here, (4) this error was so pervasive and significant that the petitioner is entitled to a new criminal trial, and (5) the criminal court violated the petitioner's due process rights. Because the improper application of res judicata is dispositive, we need not address these additional claims.

[2] We note that the criminal court was well-intentioned in its efforts to immediately address the claim of witness bias.

[3] The state argues that, even if res judicata does not apply, the petitioner should nonetheless be precluded from challenging res judicata because (1) the petitioner induced the erroneous ruling from the criminal court, and (2) the petitioner has procedurally defaulted on this claim. We conclude that neither of these doctrines apply to the present case.

First, "[t]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the [allegedly] erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party." (Internal quotation marks omitted.) *Independent Party of CT—State Central* v. *Merrill*, supra, 330 Conn. 724.

Notably, the doctrine of induced error is premised on fault for the error lying solely with the challenging party. This element is not present in the current case. To be sure, the petitioner filed the petition in the wrong court. However, the petitioner subsequently corrected this error and properly filed a motion for a new trial instead. Additionally, the state effectively argues that, by bringing a motion for a new trial based on new evidence, the petitioner induced the criminal court to unwittingly hold pointless hearings. However, from the time that the petitioner initially filed a petition for a new trial with the criminal court, the criminal court openly recognized that this type of petition is solely filed in the civil court. Overall, it appears that there is no single party at fault for the errors of the criminal court; instead, the inertia of these hearings and the mutual mistake of all the parties involved are the most likely culprits of these errors.

Second, procedural default does not apply, because the petitioner could not have properly brought his claim of newly discovered evidence on direct appeal. Procedural default applies where the "petitioner could have filed such a motion 'at any time,' including the present time . . . [but] failed to follow the proper procedures by which to correct his sentence or to preserve his challenge to the sentence before having filed this petition . . . ." (Citation omitted.) *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 39–40, 779 A.2d 80, 86 (2001). The petitioner had no right to the remedy he seeks on direct appeal; it is only available through a collateral petition. Thus, the petitioner could not have filed this petition at any time and has not procedurally defaulted. See id., 39.

––––––––––––––––––––––––