[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court consolidated for trial the two related cases in the above caption. The first is an appeal from an order of the Hamden Probate Court approving the accounting and distribution of assets in the estate of Antonio Agostinelli, who died on December 18, 1988. The second lawsuit is one for money damages against the attorney who represented the executrix of the estate.
The aggrieved individuals in both cases are Donna A. Cutler and Yolanda Jablonski, children of the decedent. The object of their grievance is their sister Antoinetta (Della) Greenberg, whom they believe cheated them out of part of their inheritance. For reasons stated below, the court finds no merit to any of their claims. CT Page 9022
FACTS
Antonio Agostinelli died on December 18, 1988. His wife, Antoinetta, had predeceased him. His survivors were his three grown daughters. Dorina cutler and Yolanda Jablonski (to whom the court will refer throughout as the plaintiffs) lived in California and Illinois, respectively, and had lived outside of the State of Connecticut for over twenty years. Their sibling Della Greenberg lived in Orange, Connecticut. Ms. Greenberg was obviously able to have personal contact more frequently with Mr. Agostinelli in his last years than were her two sisters. Nonetheless all of the sisters loved their father and were on good terms with him.
Mr. Agostinelli executed a will in 1967 leaving all of his estate in equal shares to the three of them. The will nominated Della Greenberg to be executrix.
Mr. Agostinelli lived another twenty-plus years after the execution of his will. In the years before his death at age 91, Mr. Agostinelli made gifts of sums of money to all three sisters, by making them joint owners with right of survivorship of certain bank accounts. The money in these bank accounts therefore passed outside the estate of the decedent. The succession tax return shows that the three heirs received the following sums from survivorship ("in trust for") accounts: $62,980.13 in an account to Dorina cutler; $50,569.36 in two accounts to Yolanda Jablonski; and two accounts to Della Greenberg, one for $59,003.77, and another at First Federal Bank ("the disputed account"), in the sum of $59,444.92. Also existing as survivorship property were a number of United States savings bonds.
Passing to the heirs as part of the estate were other assets: the house in Hamden, valued at $130,000, and certain stocks and United States savings bonds, with a value of approximately $23,132.44. When the decedent died, the executrix Della Greenberg asked Attorney Lawrence Greenberg, to assist with the legal affairs of the estate. He agreed to do so. He is now the defendant in this lawsuit which seeks money damages for his failure to properly handle the estate.
Initially Lawrence Greenberg ("the defendant") met with the three sisters and suggested that since there were no liquid assets in the estate they each make a modest advance of $3000 to cover fees and expenses of administration, which would be repaid CT Page 9023 out of the estate in due course. One or more of the sisters declined to proceed in this way, and that issue was dropped. The defendant took steps on behalf of the executrix to open the estate and admit the will to probate, filing the necessary papers in the Hamden Probate Court, presided over by Judge Diglio.
Internecine mistrust first seems to have surfaced when Ms. Yablonski noticed that, in the bank accounts designated for her, there had been certain withdrawals which she deemed suspicious in the years between 1985-88. Also she and Ms. Cutler believed that their father had kept things of value in a safety deposit box which was not mentioned in the probate papers filed by the defendant for the executrix. They were alarmed that the additional bank account received by their sister to their exclusion was of such a large amount in proportion to theirs and that the addition of Ms. Greenberg's name in survivorship had been accomplished recently before their father's death. In addition to suspecting their sister of underhanded conduct, the plaintiffs at some point concluded that the defendant was either in collusion with or was actively manipulating Ms. Greenberg, to the disadvantage of the estate and, in particular, to the detriment of their financial interests.
Nonetheless some degree of cooperation continued for the first year or so of the estate's existence. Della Greenberg desired to buy the house in Hamden, paying her sisters for their shares. The defendant assisted in the negotiations and closing. The estate sold the property to Ms. Greenberg on November 24, 1989 for $130,000. Each of the plaintiffs was paid $43,048.98, one-third of the adjusted sale price.
Serious disagreements continued, however. By November of 1990, the plaintiffs had retained Attorney Steven Regula to pursue their legal interests. At issue were (1) the First Federal bank account, the title to which the plaintiffs believed their sister had manipulated their father to alter or who herself had forged his name without authorization; (2) the withdrawals made from the Yablonski trust account via the savings passbook; (3) the title to thirty-eight U.S. savings bonds that the decedent held jointly with Antonia[1] Agostinelli valued at $4148.21.
The conflict among the sisters resulted in the Probate Court removing Della Greenberg as executrix on December 30, 1991, and appointing Attorney Edward C. Burt as administrator c.t.a., to finalize the affairs of the estate. CT Page 9024
In the summer of 1992, the plaintiffs filed suit[2] ("the Superior Court lawsuit") against their sister Della Greenberg in Superior Court, D.N. CV 92 0335720. The lawsuit was commenced on their behalf by Attorney Gordon Raynor. The complaint contained five counts. Count I alleged that in 1987 Della Greenberg withdrew $12,000 from the Union Trust Savings account which the decedent had denominated in trust for Yolanda Jablonski and had converted the funds to her own use. Count II realleged the facts of Count I but claimed in addition that those actions constituted interference with and deprivation of Jablonski's rightful inheritance. Count III alleged that on January 5, 1987, Della Greenberg forged her father's signature on the First Federal bank account documents to convert from his sole to their joint ownership the nearly $60,000 in that account. Count IV realleged the facts of Count IV and claimed that this conduct interfered and deprived the plaintiffs of their rightful share of the decedent's estate. Count V alleged that Della Greenberg had wrongfully taken control of the Antonia Greenberg U.S. savings bonds and refused to turn them over to the administrator of the estate for proper disposition.
Both sides disclosed experts in the authentication of handwriting on documents. The matter was claimed to the trial list. Thereafter, the plaintiffs discharged their attorney and elected to proceed pro se. The case was scheduled for trial on January 11, 1995, before Judge Harold Mulvey. On January 11, 1995, a settlement was reached and reported to the court. The court entered judgment as follows:
 Judgment for each plaintiff in the amount of $10,000.00 to be paid forthwith. It is further agreed that the savings bonds in the amount of 38 twenty-five dollar bonds presently being held by Attorney Greenberg and presently an asset of the estate of the parties' late father, Antonio Agostinelli, are to be turned into cash and the monies divided equally among the three surviving sisters (the parties).
It is not disputed that the judgment was promptly satisfied.
The judgment in the lawsuit involving the bankbooks and savings bonds did not end the controversy, however. The plaintiffs still believed that Della Greenberg and her attorney should be somehow held accountable for the handling of the CT Page 9025 estate. Among other criticisms the plaintiffs had with the defendant were that he had not promptly filed a final account of the estate with the Probate Court (even though this obviously could not occur until the Superior Court lawsuit was concluded) and that he had not promptly turned over certain documents to the successor administrator[3]. Most significantly, the plaintiffs insisted that the Probate Court revisit the issues of the savings bonds and the bankbooks on which the lawsuit and judgment in Superior Court had been based.
When the Probate Court evidently declined to do so, the plaintiff Yolanda Jablonski requested that Judge Diglio recuse himself from further proceedings. In a long letter to Judge Diglio in November of 1995, Jablonski accused the court of inaction, favoritism to Attorney Greenberg, and dislike for her. In a polite response, the judge took issue with her accusations but agreed to recuse himself on November 20, 1995.
Judge Keyes of the New Haven Probate Court was appointed by the Office of the Probate Administrator to conduct further proceedings. He did so in the Spring of 1996. The Memorandum of Decision of Judge Keyes dated March 7, 1996, resolved all outstanding issues. In it Judge Keyes ordered that the previous apportionment of taxes among the beneficiaries be reallocated, with each beneficiary paying in proportion to the benefit each received; that any remaining records be turned over to the fiduciary (Ms. Cutler); that the issue of withdrawals from and ownership of the bank accounts was subject to doctrines of res judicata or collateral estoppel as a result of the Superior Court lawsuit; and that the remaining filings to wind up the estate be completed by the fiduciary as soon as possible. The Memorandum also states, "This decision may be appealed within thirty (30) days."
No appeal was filed but it is evident that further proceedings were filed with the Probate Court. On June 21, 1996, Judge Keyes "re-opened, re-visited, and re-entered" his decision regarding the bank accounts. This second Memorandum of Decision states that "the matter is conclusively decided . . . [and the] movants have thirty days in which to appeal and permission to do so will be granted, if same is filed."
Again no appeal was filed. On July 9, 1996, Yolanda Jablonski wrote Judge Keyes a letter disputing the decision regarding the bank accounts and requesting that he recuse himself. The CT Page 9026 exasperation in the response of Judge Keyes is evident in his last orders in the case:
 July 17, 1996 TO ALL INTERESTED PARTIES: Re: Estate of Antonio Agostinelli
 Enclosed please find a copy of the writ brought in the case, a hand-written judgment of Judge Mulvey and the most recent Connecticut court decision on point.
 Once again, for the last time, the assets involved at the time the lawsuit was brought were "non-Probate assets" and the Superior Court had jurisdiction thereof. The Superior Court made a decision on these "non-Probate assets" and that decision stands.
In order to allow time for the plaintiffs to appeal, he "once again, re-opened and re-entered" the decision on the bank accounts. Also he recused himself from further matters involved in the case.
Judge Robert Killian was appointed to the case, and he conducted what was evidently the last Probate hearing prior to this appeal. The plaintiffs, the defendant Lawrence Greenberg, and the former executrix Della Greenberg were all present. Judge Killian issued a decree on January 22, 1997. In it he issued orders winding up all remaining affairs of the estate. He found that proper documentation had been submitted in support of Attorney Greenberg's fee of $2500, which amount was approved. He ordered Della Greenberg to pay $1364.12 to Yolanda Jablonski and $744.49 to Dorina cutler to carry out Judge Keyes's order regarding the reapportionment of taxes. He found that approximately $650 remained in the estate and awarded that sum to Dorina cutler as a fee and as cost reimbursement for her services as Successor Administrator c.t.a. Finally he issued orders relating to certain filings of accounts by each of the various fiduciaries.
THE PROBATE APPEAL
An appeal was filed by Dorina cutler, and Judge Killian allowed the appeal on February 19, 1997. The plaintiff Yolanda Jablonski joined Cutler in appealing Judge Killian's decree. In a lengthy letter to Judge Killian, Jablonski also requested him to remove himself from the case.[4]
CT Page 9027
On February 27, 1998, pursuant to an order of this court (Levin, J.) contained in a Memorandum of Decision denying a Motion to Strike, the plaintiffs filed an amendment which sets forth the reasons for the appeal. Neither that document nor the first complaint in the file, dated March 24, 1997, specifically addresses the decree of Judge Killian. Instead the plaintiffs accuse Della Greenberg of fraud and misconduct in her dealings with Mr. Agostinelli and his estate, both before and after his death. The case has been presented to this court by the plaintiffs as a lawsuit by the beneficiaries of the estate against the former executrix of the estate seeking money damages,[5] rather than as an appeal seeking an adjustment of the orders of the Probate Court.
This court nonetheless fully heard evidence in this matter over two days, treating it as a trial de novo pursuant to Conn. Gen. Stat. § 45a-186(a), in which the plaintiffs bore the burden of proof. Throughout the trial, the court reminded the parties not to assume that a fact was either proven or known to the court simply because it had been, as the plaintiffs sometimes termed it, "a matter of record" in the Probate Court. Also notwithstanding that some of their claims against Della Greenberg sound in fraud, the court has determined the claims of the plaintiffs based on a standard of proof more favorable to them, by a preponderance of the evidence.
Paragraph 1 of the Reasons for Appeal alleges the fact of Mr. Agostinelli's death, the admission of his will to Probate and the appointment and subsequent removal of Della Greenberg as executrix.
Paragraph 2 alleges that Della Greenberg, while executrix, wrongfully sold certain stock belonging to the estate to pay a $2500 fee to Attorney Greenberg. This court finds the allegation of wrongfulness unsupported by the evidence. Construed as a challenge to the portion of Judge Killian's decree allowing the $2500 fee, the plaintiffs have failed to prove that the fee was in an unreasonable amount or was unwarranted as a result of any other circumstances. Judge Killian's order regarding the fee to Attorney Greenberg is found by this court to be appropriate based on the evidence presented to this court.
Paragraph 3 and 4 allege that while she was executrix, Della Greenberg failed to communicate with or provide an accurate CT Page 9028 inventory of the estate to the beneficiaries. The plaintiffs have failed to establish both that these allegations are true and that any such conduct compromised the administration of the estate.
Paragraph 5 and 6 complain about the erroneous allocation of succession tax among the beneficiaries. This grievance was heard by Judge Keyes and was the subject of his first set of orders on March 7, 1996. Judge Keyes found that Cutler and Jablonski had each been debited more than they should have been for taxes, and he ordered the remaining beneficiary, Della Greenberg, to repay them accordingly. Judge Killian, in his decree of January 22, 1997, calculated the precise dollar amount that Della Greenberg should pay and ordered her to do so forthwith. There is no evidence that these orders were not in accordance with law or were wrongly calculated.
Paragraph 7 alleges that Della Greenberg refused to turn over certain assets of the estate to the successor administrators after her removal as fiduciary and that this caused the plaintiffs to be deprived of their rightful inheritance. There is evidence that because of the disputes over title to the bonds, Attorney Lawrence Greenberg held the bonds in escrow until their disposition was decided upon through the vehicle of the Superior Court lawsuit. Once judgment was entered in that case, the bonds were promptly released. Also it appears that the sum of $650.16 remained in a bank account opened for the estate by either Della Greenberg or Lawrence Greenberg until May 26, 1993, when the funds were turned over to the second successor administrator, Attorney Francis Lamboley. This court finds that these funds were neither misused nor misapplied, only that they were turned over later than would have been expected if the administration of this estate had been free of conflict. This sum was ordered by Judge Killian to be paid by the estate to Dorina cutler, so she is hardly aggrieved thereby.
In Paragraph 8, the plaintiffs allege that there are inaccuracies in the Administration Account. The court finds this to be unproven.
In Paragraph 9, as in Paragraph 4, the plaintiffs allege that Della Greenberg failed to file an accurate inventory of the estate assets. The plaintiffs have failed to prove that the assets of the estate were not marshaled or disposed of in accordance with law. CT Page 9029
Likewise in paragraph 10, the claim is that Della Greenberg concealed assets of the estate and also that she did not keep legible records of the estate bank account. The court finds that the plaintiffs have not proved any such concealment. As to the legibility issue, while the court has seen tidier accountings, the records of the bank account were, in the main, decipherable.
Paragraphs 11, 12, and 13 allege that the failure of Della Greenberg to promptly turn over documents, records, and funds to the successor trustee in a timely manner caused the plaintiffs to suffer some loss of their inheritance. The plaintiffs have failed to prove any such loss.
Paragraphs 14 through 19 repeats the suspicions of the plaintiffs about the circumstances under which the decedent designated Della Greenberg as the surviving owner of the First Federal bank account. This claim was the same one already adjudicated in the Superior Court lawsuit. Each plaintiff accepted a $10,000 payment in full satisfaction of forgoing such a claim, and judgment was entered thereon. The law does not countenance the relitigation of an issue that the parties had an opportunity to fully present to the court in a related case. Finkv. Golenbock, 238 Conn. 183, 191-93 (1996); cf., Delahunty v.Massachusetts Mutual Life Ins. Co., 236 Conn. 582, 589-92 (1996). This is especially true when the claimants have accepted a substantial sum to settle that case.
Paragraphs 20 through 22 relate to a Chubb life insurance policy of which Della Greenberg was the beneficiary. There is no credible evidence that the proceeds of this policy were mishandled in any way.
Paragraph 23 and 24 allege that Della Greenberg misrepresented to the Probate Court the contents of the safety deposit box that she held jointly with her father. The court finds that initially she did not disclose the existence of a safety deposit box to the court or even to Attorney Greenberg. The misrepresentation of which the plaintiffs complain is the problem of the similarity in the legal names of the decedent, his late wife and their daughter Antoinetta (Della) Greenberg. Whether Della Greenberg believed that the savings bonds held by the decedent and Antonia Greenberg were really hers or not, the Superior Court lawsuit laid this issue to rest. See, the discussion on collateral estoppel in Delahunty v. MassachusettsMutual Life Ins. Co., supra, 598-601. Further the court notes CT Page 9030 that Attorney Greenberg's decision to hold the bonds in his safe and deliver them to no one until the dispute was somehow resolved was a highly prudent decision and can in no way be characterized as obstructing the legal process.
The plaintiffs have failed to prove their claims.
THE TORT CASE
The second of the two cases consolidated for trial, that of Dorina cutler and Yolanda Jablonski vs. Lawrence Greenberg, is a lawsuit for money damages. In general the plaintiffs allege either that the defendant committed legal malpractice in the handling of the estate, a proposition for which no expert testimony was offered; or that the defendant "intentionally misrepresented the truth and tried to do the Plaintiffs out of something of value," Complaint, Second Count, ¶ 9, a claim that is also wholly unsupported by the evidence.[6] Many of the allegations attribute to the defendant, as agent, a duty which is really that of his principal — the executrix of the estate — and thus do not state a valid claim even if proved. In addition to a failure of proof on the liability issues involved, there was a failure to prove any specific amount of monetary loss for which the court could compensate the plaintiffs with an award of damages.
In the First and Second Counts, the plaintiffs allege that defendant asked for a three thousand dollar advance from each of them to cover the initial cost of opening and administering the estate and that this proposed transaction was some kind of misrepresentation. The evidence was that there was no agreement by the heirs to advance money in this way. Thus, there was no injury or monetary loss to the plaintiffs. Moreover, the plaintiffs have failed to prove that this type of transaction, even had it occurred, would have been unlawful or would have violated the standard of care for attorneys handling probate matters.
In the Third Count, the plaintiffs allege that the defendant quoted an exorbitant charge to prepare an inventory of the estate and requested that they sign away their rights to the estate. The court credits the testimony of the defendant that no such statements were ever made. During the time he represented the executrix Della Greenberg, the defendant certainly made an offer, communicated in writing to counsel for the plaintiffs, to settle CT Page 9031 the disputes that involved the bankbooks and the savings bonds. That offer did not involve a relinquishment of their general rights as heirs. At any rate, the plaintiffs rejected such offer at the time and made no payment to the defendant for any services in connection with the preparation of an inventory, so that they have sustained no damages.
In the Fourth Count, the plaintiffs allege that the wrongful withholding by the defendant of estate assets from the successor fiduciary and the wrongful request for money for the inventory caused the plaintiffs to suffer a financial loss because they had to go to court to resolve those issues. As previously found, the defendant did not wrongfully withhold any assets. Nor was there any wrongful request for fees. Moreover, the plaintiffs have failed to prove any such monetary losses.
The Fifth and Sixth Counts allege that the defendant failed to tell the Probate Court of the existence of the safety deposit box and to accurately inform the court of the contents. The evidence is that the executrix Della Greenberg did not inform the defendant for a considerable period of time that there was a safety deposit box. Interestingly, the plaintiffs knew of the existence of their father's safety deposit box and were aware at the time of their father's funeral that Della Greenberg had removed certain items from the box but chose not to make an issue of it at first. In fact the bankbooks that were distributed to the plaintiffs and the disputed savings bonds and First Federal bankbook appear to have been kept in the box, but the defendant did not know until later that the items had come from a safety deposit box. Once the defendant learned that there had been items in a safety deposit box, he assisted in the preparation of an inventory of its contents for the executrix to file.
The plaintiffs also complain that an affidavit prepared by the defendant of the contents was incorrect because of the confusion over whether the name Antoinetta Agostinelli or Antoinetta Agostinelli or Antonia Agostinelli on the disputed savings bonds referred to the late wife of the decedent or referred to the maiden name of Della Greenberg. The court finds that this affidavit was prepared at the direction of the executrix and that the defendant had no knowledge that it may have been inaccurate. He later prepared a corrected affidavit. Both of these affidavits were signed by the executrix Della Greenberg. There is no evidence that the defendant had any intention to mislead the court or the plaintiffs. The claim that CT Page 9032 the defendant intentionally participated in the preparation and submission of an affidavit he knew contained false information is wholly unsupported by the evidence. Nor have the plaintiffs proved any monetary loss as a result of either the "late" disclosure of the box and its contents or the dispute over the name on the bonds.
Count Seven and Eight allege that the defendant used intimidating tactics to force Yolanda Jablonski to go through with the sale of the decedent's residence to the executrix. This transaction was fully completed on November 24, 1989, well over eight years before the commencement of this lawsuit against the defendant. The plaintiff Yolanda Jablonski signed a consent to the sale on April 10, 1989. Thereafter disputes arose about rental payments and adjustments to the closing price. Also Ms. Jablonski raised the issue of tying the sale of the house to a settlement of the disputes over the savings withdrawals from the Agostinelli/Jablonski bank account. From June through September, 1989, the defendant corresponded with an attorney in Arlington Heights, Illinois, who represented Ms. Jablonski. The intimidating tactic Jablonski alleges that the defendant used was to state in a letter to her lawyer that a lawsuit was likely if Jablonski backed out of the closing. In fact, the closing occurred. There is no evidence that the defendant's conduct was unprofessional or inappropriate in any way.
The Ninth and Tenth Count allege that the defendant did not keep the estate bankbook neatly, lost the record of a stock transaction, and in other ways was negligent in handling the affairs of the estate. The plaintiffs also allege that in addition to being negligent, the defendant concealed and converted assets of the estate that did the plaintiffs out of their rightful inheritance. No evidence was presented that the conduct of the defendant fell below the standard of care for attorneys in the handling of probate matters. The plaintiffs did not prove that the defendant did any act that cheated them out of any money that was rightfully theirs.
The Eleventh and Twelfth Count allege that the defendant delayed until May 25, 1993, in turning over $650 — the remaining funds in the estate's bank account — to Attorney Lamboley, the successor administrator of the estate, causing a monetary loss to the plaintiffs. The previous administrator Edward Burt was removed in February 1992. The evidence is unclear as to when Attorney Lamboley was appointed to succeed him. The evidence does CT Page 9033 not indicate that Attorney Lamboley had any communication with the defendant, or indeed was even appointed a successor administrator by the Probate Court, until May of 1993. The defendant properly administered the estate bank account until he was obligated to turn the funds over to a successor fiduciary. The claims of the plaintiffs that the defendant misused funds has no foundation in the evidence.
CONCLUSION
In the matter of the appeal from the orders of the Hamden Probate Court, denominated in this court as Dorina Cutler vs.Estate of Antonio Agostinelli, the court finds no merit to the claims of the appellants, and the appeal is hereby dismissed.
In the matter of Dorina Cutler and Yolanda Jablonski vs.Lawrence Greenberg, the court finds the issues against the plaintiffs and in favor of the defendant and enters judgment thereon.
Patty Jenkins Pittman, Judge